HAMMID HASSEN, Respondent, v. SIDE SALEM, SOLOMON HODGE, et al., Appellants.

(185 N. W. 969.)

**Mortgages — plaintiff held to have equitable interest, and to be entitled to conveyance from vendor and from payment of amount due.**

1. In an action to determine adverse claims and to recover the value of the use and occupation of certain premises wherein the plaintiff claims that he had an equitable interest in, and was entitled to conveyance of, the premises in suit by the defendant Hodge, by virtue of a certain arrangement and contract; that he has paid the full amount due the defendant, and has for some time been entitled to a conveyance of the premises, it is *held*:

That the plaintiff has an equitable interest in the premises and is entitled to conveyance by the defendant Hodge upon the payment of the amount due Hodge.

**Mortgages — finding that purchaser had made full payment held contrary to evidence.**

2. That findings of the trial court to the effect that the plaintiff has paid Hodge the full amount due him and that no further sum is due to Hodge are not supported by, but are contrary to the weight of, the evidence.

**Appeal and error — case held subject to remanding for determination of amount due defendant from plaintiff.**

3. For reasons stated in the opinion the case is remanded for a determination of the amount due to the defendant, Hodge, from the plaintiff.

Opinion filed Dec. 1st, 1921. Rehearing denied Dec. 16, 1921.

From a judgment of the district Court of Mountrail County, *Leighton.* J., defendant, Solomon Hodge, appeals.

Remanded for retrial.

*F. F. Wyckoff* and *F. W. Medberry,* for appellants.

"The general rule is that the certificate of acknowledgement will be held as valid against the unsupported evidence of the person certified to have executed it." McCardia v. Billings, 10 N. D. 379; Patnode v. Deschenes, 15 N. D. 100; Citing 1 Cyc. 623; 2 Jones on Conveyancing, § 1196; McCardia v. Billings, supra; Young v. Engdahl, 18 N. D. 166, at p. 175.

Even though the testimony of the grantor is slightly corroborated it

is usually held insufficient to overcome the certificate. N. W. Loan & Banking Co. v. Johnson (S. D.) 79 N. W. 840.

*John J. Coyle* and *T. M. Koegan,* for respondent.

"The grantor in a deed, absolute on its face, but delivered with the oral understanding that it was to be held as security for a debt, has no title or interest to convey which will give his subsequent grantee any standing as against a purchaser from the grantee under the former deed without notice of the oral defeasance." Grigsby v. Verch, 34 S. D. 39; Mintz v. Soule, Mich. L. R. A. 1916B, 397 and annotations.

"At common law, in the absence of statute, any permanent improvement placed upon the land of another, by one having no interest or title therein, without the owner's consent, prima facie becomes a part of the realty and belongs to the owner." See 22 Cyc. p. 7, and cases cited under note 9.

"As a general rule, if the occupant has notice or knowledge of an adverse title or claim in another he is not a possessor in good faith and cannot recover compensation for improvements made thereafter, although he in good faith believes his own title to be the better in point of law." See 22 Cyc. p. 18 and cases cited under note 85; Wood v. Conrad, (S. D.) 50 N. W. 95; West v. Middlesex Bk. Co. (S. D.) 146 N. W. 598; See McKenzie v. Gussner, 22 N. D. 445.

CHRISTIANSON, J. Plaintiff brought this action to determine adverse claims to 160 acres of land situated in Mountrail county, in this state, and to recover from the defendants the value of the use and occupation of said premises during the years 1914, 1915, 1916, 1917, 1918, and 1919. Plaintiff acquired title to said tract of land under the laws of the United States of America relating to homesteads. Patent therefor was issued to the plaintiff by the United States government on May 23, 1906. Subsequently the plaintiff gave several mortgages on the land. One of the mortgages was foreclosed, and certificate of sale issued to the Citizens' State Bank of Stanley on July 8, 1911. Prior thereto, namely, on February 15, 1910, the plaintiff had conveyed the premises to the Citizens' State Bank of Stanley by warranty deed. On July 8, 1912, the last day provided for making redemption, the Citizens' State Bank of Stanley made redemption from the foreclosure by serving and filing the required notice, and making payment of the required amount, and the sheriff of

Mountrail county executed and delivered to said bank a certificate of redemption in due form. Later, and apparently under some arrangement with the plaintiff, one A. J. Ghusm, took over the interest of the Citizens' State Bank of Stanley in said premises; and on July 10, 1912, said bank executed and delivered to said Ghusm a warranty deed for said premises, which deed recites that it is given for the sole purpose of reconveying the land therein described as per a certain agreement made between Hammid Hassen and said Citizens' State Bank of Stanley at the time deed was given to the said bank by said Hassen.

Later the plaintiff had certain difficulty or misunderstanding with Ghusm—i. e., Ghusm refused to give him a contract for deed. Thereupon, in the fall of 1912, the plaintiff went down to Ft. Ransom, in Ransom county, in this state, where the defendant Solomon Hodge was located, and solicited said Hodge to take over the interest of Ghusm in the land. The defendant Hodge informed the plaintiff that he would come to Stanley later in the fall to visit a sister, and while there would look into the proposition. In December, 1912, the defendant Hodge came to Stanley and, on December 27, 1912, he paid Ghusm the amount of money Ghusm had put into the deal, and Ghusm executed and delivered a warranty deed to Hodge. Later, Hodge paid off a first mortgage, making a total amount of $2,300 invested by Hodge in the premises at that time. One of the few undisputed facts in the record is that Hodge actually did pay out $2,300 in cash at or about the time he received the deed from Ghusm. Another undisputed fact is that since that time the defendant Hodge has paid all the taxes assessed against the premises. There is, however, a square conflict in the testimony as to the arrangement made between the plaintiff and the defendant Hodge at the time Hodge received the deed from Ghusm. The plaintiff claims that Hodge at that time gave him a contract for a deed, whereby Hodge agreed to convey the premises to the plaintiff, upon the payment of $2,300 and interest. Hodge on the other hand claims that he did not want to go into the deal unless the plaintiff got his (plaintiff's) brother-in-law, one Abdel Hadey, to join the plaintiff in the agreement to purchase the premises from Hodge. Hodge gives this version of the conversation then had:

"I say, 'How long you been living here?' He say, 'About 12 years.' I say, 'How much you broke on that land?' 'About 12 acres.' I say, 'If you been on that land 12 years and only break 12 acres, how you going to

expect pay me that $2,300?' 'Well,' he says, 'I have brother-in-law here, Hadey.' 'Well,' I say, 'You better go and talk to your brother-in-law.' He went out and talked to his brother-in-law, and soon then make a bargain with his brother-in-law, and I know his brother-in-law is a man you can depend on, and I make a contract and give each one-half interest and take the land from Ghusm."

The defendant Hodge claims that thereupon, on December 27, 1912, pursuant to the arrangement then made, contracts were executed whereby he (Hodge) agreed to convey respectively to the plaintiff and to Hadey an undivided one-half interest in and to said premises on payment by each of them of the sum of $1,150 ($2,300 in all) on or before January 1, 1918, with interest at 8 per cent. per annum. And upon the trial of the action Hodge produced contracts properly acknowledged before a notary public, evidencing the arrangement testified to by him. The plaintiff, however, claims that he never signed the contracts, and that his signature thereto (written in Assyrian) is a forgery.

The plaintiff also testified that in the fall of 1914 the defendant Hodge approached him and suggested that the land ought to be put under cultivation in order to enable the plaintiff to realize some profit there-from, so that he might be able to pay him (Hodge) what he had coming; that the defendant Hodge proposed that he (Hodge) would advance the necessary money to pay for removing stone, breaking the land, and seeding it to flax; that Hodge would pay all expenses incidental to such cropping, and that the crop should be utilized first in paying the expenses thus incurred, and that the balance, if any, should be applied upon the indebtedness due to the defendant Hodge. The plaintiff further testified that on or about the time this arrangement was made the defendant, Hodge, forcibly took away from him the contract for a deed which he gave to him in December, 1912; and that hence plaintiff could not produce this contract upon the trial. The defendant Hodge, on the other hand, testified that prior to 1915 both the plaintiff and Hadey surrendered their contracts, and in effect stated to him that they had no desire or intention to carry out the provisions thereof or make payment thereunder, and that thereafter he, supposing that he was the owner of the premises, proceeded to put the land under cultivation and did put in and raise a crop thereon in 1915, and has rented it during subsequent years.

There is no dispute but that the defendant Hodge cropped the land

in 1915; he caused some 100 acres to be broken and put into flax; he paid for digging and removing the stone from the premises, for the breaking thereof, for the seed utilized, and in general paid all expenses incidental to putting the land under cultivation, putting in, caring for, harvesting, and threshing the crop. There was also some ground which had been cultivated in prior years (the testimony is in conflict as to the exact amount of such ground) which was put into oats. The evidence shows that the 1915 crop was not threshed in the fall of 1915, but that it lay out on the ground during the winter, and was threshed in the spring of 1916.

It is the contention of the plaintiff that a sufficient crop was produced in the year 1915 so that the proceeds thereof, in addition to paying all expenses advanced in preparing the land for crop, putting in, harvesting, and threshing the crop were sufficient to pay all of the $2,300 advanced by the defendant Hodge in 1912, together with interest on such sum and all taxes subsequently paid on the premises. The trial court made findings in favor of the plaintiff, finding, among other things, that the original arrangement was as testified to by the plaintiff, and that the contracts produced by the defendant Hodge upon the trial had never been executed by the plaintiff, and that his purported signatures thereto were forged. The trial court further found that the defendant Hodge forcibly took the contract for a deed away from the plaintiff; also that the agreement with respect to breaking and cropping the premises was made as testified to by the plaintiff. The trial court further found:

"That said (1915) crop of grains consisted of 1890 bushels of flax, of the value of $2.07 per bushel, and 600 bushels of oats of the value of 50c per bushel, making a total crop of $4,202.30. That the expense of the defendant Solomon Hodge in breaking, removing stone, and seeding said crop and threshing same were $954.15, leaving a balance to be credited to the plaintiff of $3,247.85. That the last of said crop was sold on August 5, 1916. That the indebtedness of plaintiff to said Hodge, in April, 1916, after deducting the costs of the 1915 crop, breaking, etc., was $2,900.04. That the defendant Solomon Hodge received from the proceeds of said 1915 crop the sum of $341.87 in excess of all demands against the plaintiff herein, and said plaintiff was, on April 1, 1916, entitled to a deed of said premises from said Solomon Hodge, clear of all incumbrances, and the sum of $341.87, less the amount of taxes paid on said premises for the 1913, 1914, 1915, 1916, 1917, 1918, and 1919

taxes levied against said land, and which were paid by said Hodge."

It is undisputed that a transaction took place between the plaintiff and the defendant Hodge, at the office of Attorney H. J. Linde in Stanley in Mountrail county in the latter part of December, 1912, and that at that time and place some written agreement, relative to the land, was made between them. The evidence shows that at that time the defendant Hodge paid the money to Ghusm, and received a warranty deed from him. The execution of that deed was acknowledged before H. J. Linde, as notary public, on December 27, 1912. Both the plaintiff and the defendant Hodge admitted that at that time and place a contract for deed was prepared and signed by them, but, as already stated, they differ as to the terms and as to the parties who signed the contract. The plaintiff claims that a contract was executed and signed by the plaintiff and the defendant Hodge alone. The defendant Hodge, on the other hand, claims that the contract then made was executed not only by the plaintiff and Hodge, but also by Abdel Hadey (plaintiff's brother-in-law), and that by the terms thereof the defendant Hodge agreed to sell and convey an undivided one-half interest in the premises to the said plaintiff and to said Hadey, respectively. It is not denied that the contract then executed was acknowledged by the parties thereto before Linde as notary public; and, as already stated, it is admitted that some contract was prepared and signed by the parties at that time. The contracts produced and offered in evidence by defendant Hodge on the trial are dated on the same day as the deed from Ghusm to Hodge is dated, and these contracts, like the deed, were acknowledged before the said Linde as notary public. Linde was dead before this suit was tried, so his testimony could not be produced; but upon the trial it was stipulated that the signature attached to the certificate of acknowledgment is the genuine signature of Linde; also, that said Linde was at the time of the certificate a duly authorized notary public. The plaintiff says that he neither signed nor acknowledged this contract, and that his signature thereto is a forgery. He admits, however, that at the time and place the contract in evidence purports to have been executed he did sign some contract. He accounts for the failure to produce the contract which he says was executed (and of which he received a duplicate) by saying that at some subsequent date the defendant forcibly took away from him the contract which he had received.

Hodge positively testified that plaintiff signed the contract offered in evidence, and he denies that he, at any time, took any contract away

from the plaintiff. According to the evidence, Linde, the notary public, was well acquainted with the plaintiff, so there is no reason to believe that a mistake was made by the notary public; and not the slightest reason has been shown why the notary should have made a false certificate. Upon a careful consideration of the evidence bearing on this feature of the case, we are entirely satisfied that the plaintiff has wholly failed to establish that his signature to the contract produced in evidence is a forgery, and that the notarial certificate is false. And, in our opinion, the findings of the trial court to that effect are incorrect. We do not, however, deem this of controlling importance so far as the rights of the parties in this action are concerned. The defendant Hodge does not contend that he put up his money with the intention of acquiring the premises in controversy for himself. On the contrary, he disclaims any such intention. He says that all he wanted and wants was and is, his money and interest thereon. And it is quite apparent from his testimony that his real purpose in going into the deal was to aid the plaintiff and save to him whatever equity or interest he had in the land. And it is further apparent that the only reason he had for wanting plaintiff's brother-in-law, At del Hadey, to join as a purchaser was to insure that the contract of purchase would be carried out, and the money invested by Hodge repaid to him. In other words, Hodge desired to have Hadey act in a sense as a surety. There is no contention that the contract of purchase has been canceled in the manner provided by statute. And, construing the evidence as a whole, we are not prepared to say that the plaintiff has abandoned or surrendered whatever interest or claim he had in the land by virtue of the arrangement made at the time Hodge took over the interest of Ghusm in the premises. In other words, we are of the opinion that the plaintiff still has an equitable interest in the premises, and is entitled to an opportunity to pay the defendant Hodge whatever is due him, and that, upon such payment being made, the plaintiff is entitled to a reconveyance by Hodge.

Upon the record before us, however, we do not feel justified in attempting to decide the controversy with respect to the 1915 crop. The evidence upon this part of the controversy is, as a whole, so unsatisfactory that we find it difficult, if not impossible, to arrive at any satisfactory conclusion. We are entirely satisfied, however, that the findings of the trial court as to the amount of grain raised and the proceeds derived by the defendant Hodge thereon, and the expenses incurred by

him incident to putting the land under cultivation, raising, gathering, and marketing the crop are not in accord with the preponderance of the evidence. We are also very much in doubt as to what the facts are with respect to the arrangement, if any, under which the 1915 crop was produced. The evidence also is not as clear as it probably can be made as to the sums expended by the defendant Hodge in making permanent improvements on the premises. These matters, of course, all relate to the amount still due to the defendant Hodge, and to be paid by the plaintiff in order to entitle him to have premises conveyed to him. Hence, so far as this feature of the case is concerned, we have reached the conclusion that the ends of justice will be best subserved by remanding the case for a retrial in accordance with the precedents set by former decisions of this court. See King v. Tallmadge et al., 178 N. W. 280.

It is therefore ordered that the case be remanded for a retrial upon the question as to what amount still remains due to the defendant Hodge from the plaintiff. The trial court, upon ascertaining such amount, will allow the plaintiff a reasonable time in which to make payment, and enter judgment that, upon such payment being made, the defendant Hodge convey to the plaintiff all his right, interest, and title to the premises. The appellant will recover the costs of this appeal. Costs of the action in the district court will abide the result of the final judgment.

GRACE, C. J., and ROBINSON, BRONSON, and BIRDZELL, JJ., concur.