FIRST NATIONAL BANK IN MINNEAPOLIS, a Foreign Corporation, Appellant, v. ROSA PLANTE née Langevin, (also Known as Rose Plante), A. M. Plante, Mary Boucher, née Langevin, and All Other Persons Unknown Claiming any Estate or Interest in or Lien or Incumbrance upon the Property Described in the Complaint, Respondents.

(235 N. W. 135.)

Opinion filed February 3, 1931.   Rehearing denied March 2, 1931.

*E. E. Fletcher* and *George A. Bangs,* for appellant.

514

*C. F. Peterson,* for respondent.

BURR, J.   This is an action to foreclose a real estate mortgage on land owned by the respondent, Rosa Plante, one of the defendants. The issue in this court is between her and the plaintiff.

Respondent contends that she never executed or acknowledged the execution of the mortgage involved, and therefore that the plaintiff has no lien upon this land.   The plaintiff urges that even if this be a fact, which is not admitted, the respondent, by her conduct, is estopped to deny the execution of the notes, the certificate of acknowledgment, and the validity of the mortgage; and further that "even though the notes

and mortgage in suit were invalid, and the defendants Rosa and A. M. Plante were not estopped to deny such invalidity," the plaintiff is entitled to judgment against her because of her prior notes and a chattel mortgage given to secure those notes, signed by and surrendered to her upon the execution and delivery of the notes and mortgage involved, and subrogated to rights under a prior mortgage she executed on this land for $600 which mortgage was also released.

The trial court found in favor of the defendant Rosa Plante, and against her husband A. M. Plante. The plaintiff appeals, demanding a review of the entire case.

The first and most important fact to determine is whether plaintiff has proved that Rosa Plante signed and acknowledged the mortgage involved.

It is the contention of the plaintiff that the three promissory notes involved, aggregating $4000, were executed by the husband and wife "to the First State Bank of Olga, but in the name of one Thomas Cregan, an officer of the bank, as a matter of convenience." The mortgage purports to be signed by the wife and the notary's certificate of acknowledgment is in the usual form, alleging that she appeared before him and acknowledged the execution.

The notes and mortgage are dated May 22, 1920. The land is situated in Cavalier county and the inland town of Olga was the trading and business point for the respondent and her family. There had been transactions between this bank and the defendants for a number of years; but at the time of the execution of the note and mortgage the respondent was at Thorne in Rolette county and had gone there on a visit "some time in April or May of that year" and did not return to Olga "until some time in July, 1920." The notes and mortgage were drawn up in the bank at Olga and were signed by the husband on or about the date shown in the notes. Mr. Cregan testifies that he mailed the notes and mortgage to the wife at Thorne for her signature and acknowledgment; but the husband claims the notes and mortgage were given to him and that he mailed them to his wife. This testimony of the husband is corroborated by the wife who says she received the papers from her husband, and returned them to her husband. She testifies specifically why she would not sign this mortgage because she had already given her husband enough money. It appears

he was slightly younger than she, he had nothing when they were married and she owned the property. Apparently the visit to Thorne was caused by a disagreement between her and her husband over some financial matters.

Mr. Cregan admits that the papers were returned to him by the husband in August of that year, and says that the wife's name was attached to the notes and mortgage at that time, and that thereafter a certificate purporting to show acknowledgment by the wife before one Robillard, a notary public, was appended.

Plaintiff urges, that in view of the allegations in the certificate of the notary and the weight to be attached thereto as indicated by the decisions of this court in the cases of McCardia v. Billings, 10 N. D. 373, 88 Am. St. Rep. 729, 87 N. W. 1008; Patnode v. Deschenes, 15 N. D. 100, 106 N. W. 573; and similar decisions in other jurisdictions, the trial court was in error in holding the mortgage was not signed and acknowledged by the respondent. While such a certificate of acknowledgment imports verity as we have held in the cases cited, nevertheless it is subject to challenge, and its evidentiary force may be destroyed by proof.

The trial judge in his memorandum opinion states why he does not believe the respondent ever signed the mortgage and why he stigmatizes the alleged signature as a forgery. The appellant claims that this is in effect a decision based in part at least upon the alleged personal knowledge of the trial judge and not based solely upon the evidence introduced at the trial of the case. It is not necessary for us to pass upon this feature because upon a review of the testimony in the case we come to the same conclusions reached by the trial court—that the respondent did not sign nor acknowledge the execution of the mortgage.

There is no positive external evidence supporting the certificate of the notary. It stands solely on its content. The notary said the only portion of the certificate which is in his handwriting is his signature and the date when his commission expired. He had no independent recollection of taking the acknowledgment, but said he did not take acknowledgments unless the blanks were filled and the parties appeared before him.

Originally the certificate was a blank form attached to the mortgage.

The husband says he went with Cregan to the notary on May 22nd and acknowledged the execution of the mortgage; that none of the blanks were filled out at the time; that he then mailed the papers to his wife at Thorne; and she returned them to him unsigned; that some time in August he gave the papers to Mr. Cregan and after this the blanks in the certificate were filled in showing a date in August.

As shown before, the wife testified she refused to sign the notes and mortgage and sent them back to her husband. She had no recollection of ever appearing before the notary, except once with reference to hail insurance.

Mr. Cregan denies that he went with the husband to the notary in May, or at any time, and he says he filled out the blanks in August. At one time he said the notary's signature and seal were on the papers when the husband brought them back, but later he said the notary's certificate was not attached at that time; that the husband came into his office in August, he is not sure if the wife was with him, and the blanks were then filled in and the husband sent it with the papers to the notary; he says he mailed the papers to the wife, that he knows her signature and it is hers, and admits the papers were returned to him by the husband, and not by letter from the wife. A former employee of the bank also identifies the signature as that of the wife.

All parties to the main controversy agree the notes and mortgage were the culmination of an attempt to take care of indebtedness which the Plantes, particularly the husband, owed the bank. Though the negotiations took place in May, and were for the purpose of clearing up this indebtedness, the record is silent as to any inquiry on the part of the cashier as to the cause of this delay of almost three months in the return of the papers; except that one time he inquired if the wife had signed; silent as to any concern which he showed in regard to completion of the deal—in fact the cashier appears to have treated it as a matter of supreme indifference to him.

There are many other features in the testimony which we must consider. When we examine the acknowledgment, notice the difference in ink, the difference in the writing, consider the testimony of all the witnesses, and the unexplained delay we are convinced that the value of the certificate as evidence is seriously impaired. We give the necessary weight to the notary's acknowledgment, determined by previous

decisions and by the general rule relative thereto. Nevertheless we are satisfied that the trial court was correct in holding that the notes and mortgage were not signed by the defendant Rosa Plante and that the mortgage was not executed by her.

The main reliance of plaintiff for estoppel is the alleged action of the respondent in paying to the bank interest upon this mortgage. The evidence shows the respondent did give to Mr. Cregan a note for interest due, though she claims she did not know she had signed that note. Her explanation is: "I did not know my name was on the note given, but we were living together on the place and I thought it would hold good." The record shows the relations between the husband and wife were such as are usual among farmers in this State, even in cases where the land is owned by the wife. The husband is permitted to farm and does farm the land very much as if it were his own. He transacts most of the family business and very frequently the wife does very much as she is requested to do. For this reason doubtless, the respondent thought that in some way she might be liable for the interest. This however, does not estop her from showing that she never gave the mortgage on her land. So the question of estoppel is eliminated.

The last point raised by the appellant is that it is entitled to subrogation.

The evidence shows that plaintiff and defendant were married in 1916 and began their farm operations on this land. To do so they bought livestock and machinery, purchased largely with the wife's money. To carry on their farm operations she and the husband borrowed money from time to time. Among other transactions with the bank of Olga was the giving of a note for $600.00 to repay a western bank for money advanced to the defendants that they might purchase cattle. They gave a real estate mortgage on this land to secure the $600.00. Payments were made from time to time thereon and whatever balance remained was carried into a new note, until in 1918 it was included in the note for $600 signed by the husband only. Later this, together with other indebtedness of the husband and this respondent was carried into two notes for $962.50 and $1,900 respectively and the wife says she did not sign the chattel mortgage securing the $1,900 note. Signing of some of the other notes included in the settlement of

May 1920, made with the husband is also denied by the wife; but we do not pass on this, as the only subrogation desired, and discussed later, is to rights under the $600 real estate mortgage. Though part of these notes was paid in 1920, including all of the $962.50 note, yet other items and notes were involved so that eventually on May 22, 1920, the Bank of Olga claimed the respondent and her husband owed the bank approximately $4,000. Some of these items were for over drafts made by the husband; some were for small notes of the husband said to be signed by the wife; and whatever was admitted by the bank to be included in the $4,000 over and above all indebtedness was deposited in the bank to the credit of the Plantes so that they might check against it.

Some of these items which had been carried along from 1916 were secured by chattel mortgage. It is the contention of the plaintiff that if the mortgage involved is held to be invalid the old $600 real estate mortgage, given in 1917 and thereafter released, should be re-instated, and the plaintiff subrogated to rights thereunder.

The mortgage in issue was given to Cregan for the Bank of Olga. It was assigned to the plaintiff as security for indebtedness of that bank, in lieu of other notes already hypothecated. There is nothing in the record showing plaintiff at the time it got this mortgage knew anything about the mortgage that was released, or that such mortgage had anything whatever to do with the transaction between the banks. The claim to subrogation appears to be an afterthought. It is not set up in the pleadings, the complaint being the usual one in an action for foreclosure.

The notes and mortgages involved were not taken in payment or satisfaction of this real estate mortgage to which the plaintiff claims to be subrogated. That real estate mortgage had passed into a chattel mortgage. The note secured by the first real estate mortgage was paid in part and the remainder carried into the other notes. As the plaintiff itself says "We have a situation where the original real estate mortgage is released and for it is substituted an admittedly valid chattel mortgage which is in turn released upon the giving of a real estate mortgage upon the same land as the original real estate mortgage." It is not claimed there was any fraud on the bank of Olga in getting the release of the first mortgage when the chattel mortgage was taken,

and there was no fraud on the part of Rosa Plante when the chattel mortgage was released.

Plaintiff can have no better claim than the bank at Olga had, and where the Bank of Olga created such a situation as this equity leaves it therein. A forged signature is entirely inoperative unless the party whose signature is forged is estopped from claiming forgery, which is not the case here. Comp. Laws 1913, § 6908; Olsgard v. Lemke, 32 N. D. 551, 156 N. W. 102. In the light of the facts in the case Cregan knew the land belonged to the wife, but his transactions in this matter were all with the husband. Seeing the plaintiff did not sign the papers her name must have been forged. The notary seems to have acted the same as many other notaries act when they take acknowledgments. There is nothing to indicate he forged the name or had any interest in having it forged. The only other person is the cashier, the person who is really the bank, and to whom the mortgage was taken.

Plaintiff cites the case of Newcomer v. Sibon, 119 Kan. 358, 43 A.L.R. 1387, 239 Pac. 1110, in support of his theory of subrogation; but here the money was *innocently* advanced *to pay off a lien* on the land. This is not the situation in the case at bar. It was not "innocently" advanced, if the cashier had the name of the wife forged, and the proceeds were not used to pay off the mortgage sought to be re-instated. In another case cited by the plaintiff—Serial Bldg. & L. Inst. v. Ehrhardt, 95 N. J. Eq. 607, 124 Atl. 56—the money was used to pay off a lien that was confessedly good. In the case of Zinkeisen v. Lewis, 63 Kan. 590, 56 Pac. 664, cited, the husband and wife persuaded the defendant to pay off a valid note and mortgage and deliver the papers to them and thus the husband gave a new mortgage with the wife's signature forged. The defendant took the new mortgage in good faith and it was held he was subrogated to the rights under the old mortgage. This state of facts is not analogous to the one at bar. It is not claimed money was advanced for the purpose of paying the mortgage released, no claim such mortgage was to hold good if the new one was abortive, no claim the deal was an advancement at all, except in so far as the amount of the notes appears to be a few dollars in excess of indebtedness and this excess was credited to the defendants' account in the bank. True, as we point out in Nelson v. Nelson, 58

N. D. 134, 226 N. W. 476; the equitable principle of subrogation is adopted to prevent injustice, but each case must be determined by itself.

As said in the case of Serial Bldg. & L. Inst. v. Ehrhardt, 95 N. J. Eq. 607, 124 Atl. 56, supra, "the doctrine of subrogation being purely equitable will be applied only in an equitable discretion and with due regard to the legal and equitable rights of others." Clearly this case is not one for the application of such principle against the wife, the owner of the land. When plaintiff received this mortgage it took the risk of the same being the genuine act of the owner of the land, and relied upon the responsibility of its transferror. The claim of subrogation can not be allowed.

The plaintiff recognizes the futility of making any claim of subrogation to rights under the chattel mortgage, saying "The property covered by the chattel mortgage has been by Rosa Plante and her husband sold and dissipated; a subrogation to the lien of the chattel mortgage would now be entirely worthless." Without deciding whether defendants fraudulently dissipated the property it must be conceded experience tells us that property subject to a chattel mortgage thirteen or fourteen years old is scarcely worth pursuing. Hence we do not discuss rights under this mortgage. The judgment of the district court therefore, is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.