[File No. 5984.]

HELEN E. PASSENGER, Respondent and Appellant, v. FRANK COAN, Appellant and Respondent.

(238 N. W. 773.)

Opinion filed October 26, 1931.   Rehearing denied November 20, 1931.

*C. E. Brace,* for appellant.

*F. B. Lambert,* for respondent.

Burr, J. This is an action to determine adverse claims to property—each party claiming to be the owner in fee simple. The trial court found for the defendant; but found the plaintiff has a lien on the land in the sum of $1,018.87 with interest. because of taxes paid; and is also entitled to the proceeds of the 1930 crop. From the judgment entered both parties appeal demanding a trial de novo.

An abstract of title was introduced and received in evidence and from this and other testimony we find as undisputed facts:

The defendant made homestead proof on the land in April, 1909; on May 5, 1909 he executed a preliminary mortgage on the land to the State Bank of Berthold for $850; and another to the same bank on June 26, 1909 for $346.20; on October 28th he executed a preliminary mortgage for $140 to one H. E. Johnson, and on the same day a preliminary mortgage for $200 to one Balsukot—the latter mortgage being recorded five minutes later than the Johnson mortgage. A patent to the land was issued by the United States dated December, 1909 and recorded June, 1910. In April, 1910 the defendant gave a mortgage on this land to Hagen & Erickson for $233.90. In 1911 the Johnson mortgage was foreclosed and the land sold for $205.35, the certificate of sale being dated February 15, 1911. The Balsukot mortgage was foreclosed and the land sold on March 23, 1911 to Balsukot for $278.47, the certificate being issued that day and recorded the next day. On March 22, 1912 Balsukot assigned his certificate of

sale to one Stevenson, an officer of the State Bank of Berthold, who mortgaged the land to one Churchill to secure the payment of $2,000 due in 1917, and gave another mortgage on the land to secure the sum of $400, both mortgages being given March 25, 1912. On the 26th of March, 1912, both mortgages to the State Bank of Berthold were satisfied of record and the land redeemed from the Johnson fore-closure—the certificate of redemption being dated Feb. 10, 1912,—and on March 28, 1912, Stevenson received a sheriff's deed. Exhibits received in evidence show that prior to the time Stevenson got this sheriff's deed, there were docketed in the district court nine unsatisfied judgments against defendant for $927.63, without interest—six of them for $647.25 being docketed prior to final proof and the other three after the Balsukot mortgage was given.

On May 24, 1917, Stevenson and wife mortgaged the land to one Griffith, to secure the payment of $2,000 due May, 1922, and on the 29th day of May there was recorded a satisfaction or release of the Churchill mortgage. In June, 1917, this Griffith mortgage was assigned to one Hanks.

On June 1, 1922, the defendant executed to the holder of the mortgage an extension of mortgage loan agreement wherein it is stated that "at the special instance and request of the said Frank Coan" the time and payment of the note and mortgage is extended for five years and in said instrument the defendant "as consideration of said extension" agreed "to pay said principal sum (on the mortgage) at its maturity as hereby extended with interest" for the succeeding five years in accordance with the terms of "five extension interest coupon notes bearing even date" with the instrument, which notes were signed by the defendant. The defendant in said extension agreement "further agreed that all the stipulations and provisions of said principal note and all the stipulations, provisions and covenants of the mortgage deed given to secure the same, including the power of sale therein contained, shall remain in full force and effect, so far as it can be applied hereto, and nothing herein contained shall be construed to impair the security or lien of the holder of said mortgage, nor to affect nor impair any rights or powers which he may have under said note and mortgage for unfulfilment of this agreement." This extension agreement was ac-

knowledged before a notary public in Ward County on June 10, 1922, but was not recorded. Disputed facts will be mentioned hereafter.

Under the claim that the defendant had not paid the extension interest coupon notes due May, 1923, May, 1924 and May, 1925 the holder of the Griffith mortgage, the executrix of the estate of Hanks deceased foreclosed the mortgage and the certificate of sale was assigned to the plaintiff, who on January 17, 1927 obtained sheriff's deed to the land. Notice of intention to foreclose was served on Stevenson, the record title owner and the mortgagor, but no notice was served upon Coan. It is not contended that the foreclosure of the mortgage by the executrix is not regular in all respects unless notice of intention to foreclose should have been served upon the defendant Coan, who was living on the land.

The defendant claims the Balsukot mortgage was void because given before the issuance of patent; that he never signed any extension agreement, or if he did his signature thereto was obtained by fraud; that the assignment of the certificate of sale on the foreclosure of the Balsukot mortgage was obtained fraudulently by the said Stevenson; that he himself furnished the money to redeem from the foreclosure; that he paid to Stevenson, or to the bank of which Stevenson was an official, all money necessary to pay and satisfy the Churchill mortgage and that said mortgage was in fact released; that the giving of the Griffith mortgage by Stevenson was in fraud of defendant's rights; that subsequent thereto, through financial transactions, he paid to the bank more than enough to discharge in full the said Griffith mortgage; and that at such time both the bank and Stevenson were agents of the holder of the mortgage to receive said payments.

The trial court found that the Churchill mortgage and the Griffith mortgages executed by Stevenson "were null and void from the beginning;" that Stevenson fraudulently secured for himself an assignment of the certificate of sale under the Balsukot foreclosure while acting as agent for the defendant; that after the Balsukot mortgage was foreclosed he employed one W. R. Bond of Minot to obtain a loan of $2,000 for him, to be secured by first mortgage upon the land, and therefore secured money for a redemption, but that the said Stevenson fraudulently used it for the purpose of obtaining an assignment of the certificate of sale; that the defendant relied implicitly upon Steven-

son and his representations and that he had paid to Stevenson from time to time, from proceeds of crops, more than enough to satisfy all claims to Stevenson and to satisfy the Churchill and Griffith mortgages; that owing to the fact Coan was living on the land at the time the Griffith mortgage was executed the said Griffith and his assigns had notice of the rights of Coan to the land; the extension agreement was invalid as being obtained fraudulently and not binding because not signed by the holder of the mortgage; that in addition the foreclosure of the Griffith mortgage was void from the beginning because of failure to serve upon Coan the notice of intention to foreclose.

At the time of the trial both Stevenson and Hanks were dead. The defendant testified to a series of transactions with Stevenson covering practically all the time from 1909 until the death of Stevenson, and claimed a state of affairs wherein he the defendant, an old man, trusted Stevenson implicitly, continually took his word as to the amount of indebtedness, signed whatever papers were put before him, turned over the proceeds of the crops from year to year and in every respect did exactly as Stevenson requested. These findings plaintiff disputes.

While the findings of the trial court, in an equity case are entitled to consideration they are not controlling in this court when the case is before us for a trial de novo. Merchants Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488; Englert v. Dale, 25 N. D. 587, 597, 142 N. W. 169; Andersen v. Resler, 57 N. D. 655 (and cases cited on page 665), 223 N. W. 707, 710.

There is no merit in the contention that the preliminary mortgages were not valid. The title acquired by defendant through his patent inured to the benefit of the mortgagees as of the date of the execution and delivery of the mortgages. Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; First Nat. Bank v. Zook, 50 N. D. 423, 196 N. W. 507; Heran v. Elmore, 37 S. D. 223, 157 N. W. 820; Stark v. Morgan, 73 Kan. 453, 85 Pac. 567, 9 Ann. Cas. 930, 6 L.R.A.(N.S.) 934 and note.

Even if the contention of the defendant be correct, that Stevenson was his agent for the purpose of redeeming from the Balsukot mortgage, and either took the deed to himself fraudulently, or to cut out all subsequent liens, there is nothing in the testimony to show that either Churchill or Griffith knew anything about it, except such notice as

each would have because of defendant's residence upon the land and the duty to inquire as to his rights. When the Churchill mortgage was given there were mortgages outstanding and superior to the Balsukot mortgage that was foreclosed. These amounted to over $1,425, without interest. We do not know how much he owed the bank in addition. Stevenson gave two mortgages aggregating $2,400. The superior mortgages and liens were discharged of record. Some one must have paid them. Clearly the defendant got the benefit of this. There were mortgages subsequent to the Balsukot mortgage that were cut out by the foreclosure; but if the defendant had redeemed in his own name, so that title was reinvested in him, these might very readily incumber the land. See Merchants Nat. Bank v. Miller, 59 N. D. 273, 229 N. W. 357. There were also two judgments for $221.68 and interest docketed in district court after the giving of the Balsukot mortgage and before its foreclosure, and one for $58.75 and interest docketed during the year of redemption. By taking title in Stevenson on redemption all these were cut off. There were also docketed against the defendant after the giving of the Griffith's mortgage and before its foreclosure, one judgment for $2,500 and interest, and two judgments docketed during the year of redemption one for $250.75 and interest and one for $2,317 and interest, on which $387.10 was paid by an execution sale. The testimony of the defendant is extremely vague. He kept no books, he had no records, he could not show the amount of his indebtedness to Stevenson or Stevenson's Bank. As pointed out Stevenson was dead at the time of the trial, and defendant could make any unconfirmed statement he wished. Even if the defendant trusted Stevenson implicitly and Stevenson collected from him from year to year the proceeds of the crops for the purpose of paying the defendant's debts and converted the amounts to some other use, nevertheless the holders of the mortgages are not shown to have known this.

It is the claim of the defendant that the holder of the mortgage sent the interest coupon notes to Stevenson, or his bank at Berthold, for collection and that the defendant paid the money to Stevenson or the bank and therefore the interest coupon notes were paid. Only one of these five notes bears the stamp of the Berthold bank, but all are payable at Sleepy Eye, Minnesota. There is nothing but the vaguest statements on the part of the defendant indicating he paid

these notes. He claims he did not know anything about the mortgage or the interest coupon notes, and yet he says he paid them—his testimony being that he was paying all his money into the bank to apply upon his indebtedness. There is nothing to indicate the holder of the mortgage sent the principal note for collection.

Defendant says whenever signed this mortgage extension agreement or if he did his signature was obtained fraudulently. His acknowledgment is on the instrument and is in accordance with the statute. Such acknowledgment can not be impeached by the uncorroborated statement of the defendant that he did not know he signed it, or if he did sign it that he signed it through fraudulent statements by Stevenson. There is no satisfactory proof that Stevenson procured this extension agreement and that if he did he was the agent of the mortgagee or his assignee. If anything he was the agent of the defendant. The weight to be attached to such an acknowledgment can not be overcome by a mere statement on the part of the defendant that Stevenson fraudulently represented the contents of the instrument. See McCardia v. Billings, 10 N. D. 373, 379, 88 Am. St. Rep. 729, 87 N. W. 1008; Patnode v. Deschenes, 15 N. D. 100, 106 N. W. 573. No fraud on the part of the holder of the mortgage or of the notary is claimed, nor that either of them knew of fraud. Such certificate, "regular on its face, is presumed to state the truth, and proof to overthrow it must be very strong and convincing." Severtson v. Peoples, 29 N. D. 372, 148 N. W. 1054; Hassen v. Salem, 48 N. D. 592, 598, 185 N. W. 969. As to what will impeach such certificate, see Yusko v. Studt, 37 N. D. 221, 163 N. W. 1066; Hazlett v. Mathieu, 57 N. D. 57, 220 N. W. 647; First Nat. Bank v. Plante, 60 N. D. 512, 235 N. W. 135. Because the same was not signed by the holder of the mortgage is immaterial. If the defendant executed and delivered this agreement and executed the five interest coupon notes for the interest due during the five years of extension and got the benefit of the extension it is sufficient. It is clear it was accepted as an extension, the extension was granted and the defendant is not in position to complain because the assignee of the mortgage did not sign it.

The language of the instrument and the provisions and agreements therein are such that even though the mortgagees were put on inquiry

as to Coan's rights because of his residence upon the land, yet he ratified and assumed the mortgage and therein agreed to pay the principal sum due and agreed that all of the rights accruing to the mortgagee because of the provisions of the mortgage should stand. The defendant can not question the validity of this extension agreement.

There is no merit in the contention that the notice to foreclose the mortgage should have been served upon the defendant. The provisions of section 8099a of the Supplement—the law in force at the time of foreclosure—require notice of intention to foreclose to be served upon the "title owner according to the records in the office of the register of deeds." This was done. Stevenson was such "title owner." Thus service of notice of intention to foreclose upon the defendant was not necessary.

The evidence shows conclusively that the mortgage is valid and was properly foreclosed, therefore the judgment of the lower court is reversed and title to the land ordered quieted in the plaintiff.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.