**Martha W. EISENBARTH, Plaintiff and Respondent,**

v.

**Ed EISENBARTH, Defendant and Appellant.**

**No. 7649.**

Supreme Court of North Dakota.

Dec. 18, 1956.

Rehearing Denied Jan. 18, 1957.

J. K. Murray, Bismarck, for defendant and appellant.

Strutz, Jansonius & Fleck, Bismarck, for plaintiff and respondent.

MORRIS, Judge.

This is an appeal from a judgment of the district court decreeing the cancellation of a mortgage. The case is here for trial de novo. The property in question consists of

a house and the tract of land on which it is located at 417 18th Street in the City of Bismarck. The plaintiff alleges that there appears of record in the chain of title to this property a second mortgage dated April 14, 1951, purporting to be given by William E. Eisenbarth and Martha W. Eisenbarth, his wife, to Ed Eisenbarth to secure the payment of $5,000 and that this mortgage purports to have been signed before E. P. Daniels, a notary public of Grant County, on April 14, 1951. The plaintiff further alleges that she did not either sign the mortgage or acknowledge it before E. P. Daniels or any other officer authorized by law to take acknowledgments and that if she did sign the mortgage her signature was secured by fraud and deceit and that the instrument is void.

The defendant answers by way of general denial and counterclaims to the effect that the mortgage is valid, is in default, and that the defendant is entitled to a decree of foreclosure for which he prays.

The trial court found that the property covered by the mortgage became the homestead of the plaintiff and her family on the date the property was acquired, April 13, 1951; that the mortgage was not signed or acknowledged before the notary public whose name appears on the instrument; that she never acknowledged it; and therefore the mortgage is void.

▮ It is the law of this state that the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is both executed and acknowledged by the husband and by the wife. Section 47–1805, NDRC 1943; Severtson v. Peoples, 28 N.D. 372, 148 N.W. 1054; Rasmussen v. Stone, 30 N.D. 451, 152 N.W. 809; Hazlett v. Mathieu, 57 N.D. 57, 220 N.W. 647; Larson v. Cole, 76 N.D. 32, 33 N.W.2d 325; Neset v. Rudman, N.D., 74 N.W.2d 826.

The plaintiff strenuously contends that she never appeared before the notary public and never acknowledged to him in any manner that she signed the mortgage and that regardless of whether or not her signature appears on the mortgage it is void.

Although the plaintiff and her husband were married and living together at the time the mortgage was signed they were divorced in February 1954 and at that time William E. Eisenbarth conveyed his interest in the property to the plaintiff by quit claim deed.

The mortgage is in all respects regular on its face. It bears the signatures of the plaintiff and her husband as mortgagors. Below their signatures appears a certificate of acknowledgment signed by E. P. Daniels, notary public for Grant County, North Dakota, to which his notarial seal is affixed. The certificate recites that on the 14th day of April, 1951

"William E. Eisenbarth and Martha W. Eisenbarth, his wife known to me to be the persons who is (are) described in and who executed the above and foregoing instrument, and severally acknowledged that they executed the same."

▮ It is in the form prescribed by Section 47–1927, NDRC 1943. Such a certificate imports verity. Although it is presumed to state the truth it is not conclusive. Proof to overthrow its required recitals must be clear and convincing. Klundt v. Pfeifle, 77 N.D. 132, 41 N.W.2d 416; Passenger v. Coan, 61 N.D. 569, 238 N.W. 773; Severtson v. Peoples, 28 N.D. 372, 148 N.W. 1054; Patnode v. Deschenes, 15 N.D. 100, 106 N.W. 573; McCardia v. Billings, 10 N.D. 373, 87 N.W. 1008, 1010, 88 Am.St.Rep. 729. In the latter case it is said:

"The general rule is that the certificate of acknowledgment will be held valid as against the unsupported evidence of the person certified to have executed it."

However the court further comments:

"There are cases to be found adverse to this general rule, and it is true that it is difficult, if not impossible, to lay down an invariable rule in this class of cases, as much depends upon the weight to be attached to the testimony of the grantor, considered in view of the facts and circumstances of each particular case."

In Yusko v. Studt, 37 N.D. 221, 163 N.W. 1066, 1068, it is said:

"Considering the certificate of acknowledgment of the notary public, it is a well-established rule that such certificates cannot be impeached, unless the testimony bearing on the impeachment is clear and convincing. The certificate of acknowledgment of a notary public, regular on its face, raises a strong presumption of due and proper execution, and cannot be impeached, except by clear and conclusive testimony of a positive character."

We now turn to the evidence bearing upon the verity of the certificate. At the time the mortgage was given the plaintiff and her husband were in the process of purchasing a house in Bismarck. The purchase price was $15,000. Title was being taken in joint tenancy. At that time the purchasers resided in New Leipzig, a town of less than 500 population. William E. Eisenbarth had a little over $2,000 in cash. A loan of $8,000 was arranged for on a first mortgage on the Bismarck property to the First Federal Savings and Loan Association of Bismarck. The records in the office of the register of deeds of Burleigh County show that this mortgage was dated April 13, 1951, acknowledged by the plaintiff and her husband before E. P. Daniels, notary public of Grant County, on April 17, 1951, and recorded the same day.

Also on April 17 the plaintiff and her husband executed and acknowledged an assignment of rents before the same notary public, which was also recorded on the same day.

The next instrument shown of record in the chain of title is a warranty deed by the owners of the property in question to William E. Eisenbarth and Martha W. Eisenbarth, husband and wife, joint tenants with right of survivorship, dated April 6, 1951, acknowledged by the grantors on that day and recorded April 23, 1951.

The next instrument is the mortgage which the plaintiff seeks to have canceled by this action. It is dated April 14, 1951, and recorded January 6, 1954. It purports to have been acknowledged by the plaintiff and her husband before the same notary whose certificates of acknowledgment appear on the first mortgage and on the assignment of rents.

The trial was held in May 1956. The notary was called as a witness on behalf of the plaintiff. He remembered little about the transaction. He recalled that William E. Eisenbarth appeared before him when he drew up the mortgage. He did not recall that the plaintiff ever appeared before him as a notary public. He said: "I have a lot of people coming over there, have papers acknowledged. But, I don't recall." He also testified that it was his policy to always have people appear before him when taking their acknowledgments. When asked about the genuineness of the signatures of the plaintiff on the mortgage and on the accompanying note of $5,000, he stated that he would not swear positively that they were her signatures but he felt sure they were.

The plaintiff testified at some length. She started out on direct examination by stating that the first time she saw the second mortgage was the morning of the trial. She testified further as follows:

"Q. There is a signature on there that purports to be yours. Did you sign that?

"A. It looks like my handwriting, but I don't remember signing it.

"The Court: You don't know?

"The Witness: Ever signing it?

"The Court: You don't recall signing it?

"The Witness: No, never.

"Q. (By Mr. Strutz) That signature was supposed to have been signed before E. P. Daniels, a notary public in Grant County. Did you appear on the 14th day of April, 1951—Did you appear before Mr. Daniels that day?

"A. No, I didn't."

Later she was asked: "Did you ever sign this mortgage, Exhibit 1, knowing it to be a mortgage to secure borrowed money?" To which she answered: "No, I didn't." She further testified that up to that time she and her husband had been living in their home in New Leipzig. When asked about her signature on the note, she stated that it looked like it. Finally the court asked: "Do you deny that is your handwriting?" To which she replied: "I wouldn't deny it either."

The following appears in her testimony when asked about the first mortgage of $8,000 to the First Federal Savings and Loan Association:

"Q. Now, while you and your husband were still living in New Leipzig did you and your husband come to Bismarck and go to the First Federal Savings and Loan Association and give a mortgage for $8,000? A. I didn't.

"Q. Oh, you didn't sign that mortgage at all that was given to the First Federal Savings and Loan Association for $8,000? A. I didn't, really.

"Q. You didn't sign that mortgage? A. I signed it but not down at the loan company.

"Q. Where did you sign that $8,000 mortgage to the loan company? A. I wouldn't know.

"Q. As a matter of fact, didn't you sign it here at the loan company's office? A. No, I did not.

"Q. Did you sign it then in New Leipzig? A. No.

"Q. Where did you sign it? A. I don't know.

"Q. Well, you knew you were signing a note and mortgage to this loan company for $8,000, didn't you? A. I didn't know.

"Q. Didn't know. Did you ask anybody what was in that note and mortgage at the time you signed it? A. Bill told me it was money for the house, that's all I know."

Later under further questioning she admitted that she knew she was signing a note and a mortgage for $8,000. She still insisted that she never knew she signed the second mortgage.

There can be no question as to the genuineness of the signatures of the plaintiff on the $5,000 note and mortgage. Her husband positively identifies her signature. The notary public, who is a bank cashier, stated that in his opinion the signatures were hers. On cross-examination she was required to sign her name five times and a comparison of those signatures with the ones on the instruments show that they are identical. Her testimony regarding her signatures on both the first and second mortgages is equivocal and evasive.

Her testimony regarding the acknowledgment may be summarized by pointing out that she says she never appeared before Mr. Daniels on April 14, 1951, and that she never appeared before him to sign an instrument. The record shows her acknowledgment of the first mortgage and the assignment of rents before the same notary on April 17. It is upon that testimony that

we are asked to determine that the certificate of the notary public on the second mortgage is false, insofar as it states that she appeared before him and acknowledged the genuineness of her signature on April 14, 1951. Her assertions in this respect are equivalent to charging the notary with the commission of a felony. Any officer authorized to take an acknowledgment who knowingly and falsely certifies that an instrument was acknowledged by a party thereto when in truth such instrument was not acknowledged is guilty of forgery. Section 12–3904, NDRC 1943.

Our attention has been called to the case of First National Bank of Minneapolis v. Plante, 60 N.D. 512, 235 N.W. 135. In that case this court sustained the trial court in holding that certain notes and a mortgage were not signed by one of the purported mortgagors, Rosa Plante, and that the mortgage was not executed by her, despite the fact that the certificate of acknowledgment on the mortgage was apparently regular on its face and the notary testified that he had no independent recollection of taking the acknowledgment but said that he did not take acknowledgments unless the blanks were filled in and the parties appeared before him. In that case Rosa Plante not only positively denied that she had signed or acknowledged the mortgage but there appeared to be a number of circumstances which are referred to in the opinion which strongly corroborate her testimony.

In the case before us the testimony of the plaintiff is practically uncorroborated and such circumstances as are disclosed, while they may be consistent with the truth of the plaintiff's testimony, are equally consistent with the truth of the recitals of the certificate. In Elliott v. Knappenberger, 177 Okl. 303, 58 P.2d 1240, 1242, the plaintiff testified positively and unequivocally that she never signed nor gave a deed affecting the land to any person. In rejecting the plaintiff's contention the court said:

"The established rule of law is that evidence to impeach a certificate of acknowledgment must be clear, cogent, and convincing. It must establish the falsity to a moral certainty. Unless the testimony of grantor reaches this conclusive degree of certainty, it must be corroborated."

The court also said in its syllabus:

"Where the circumstances are as strongly in favor of the truthfulness of a certificate of acknowledgment as in the falsity thereof, there is no substantial corroboration of the testimony of the grantor."

The plaintiff in this case is an interested party with much at stake. While her testimony that she never acknowledged the mortgage appears to be fairly positive, most of her other testimony is uncertain and inconsistent with established facts and circumstances. It is clear that the defendant Ed Eisenbarth loaned his son $5,000 which was used in part payment for the house. It is for this sum that the mortgage was given. In a divorce settlement the son gave a quit claim deed of his interest in the house to the plaintiff. She is now the sole owner, subject to valid encumbrances. The burden of proof was on the plaintiff to establish by clear and convincing proof that she did not acknowledge the execution of the mortgage before the notary public whose certificate states that she did. We find that she has failed to sustain that burden and the mortgage is therefore valid.

The defendant has counterclaimed for a foreclosure of the mortgage. Because of the determination of the trial court that the mortgage was invalid that phase of the case has not been tried. The judgment of the trial court is reversed and the case is remanded for a trial of the issues raised by the counterclaim and the plaintiff's reply thereto.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.