**MOTT GRAIN COMPANY, Plaintiff and Appellee,**

v.

**FIRST NATIONAL BANK & TRUST COMPANY OF BISMARCK, Defendant and Appellant.**

**Civ. No. 9355.**

Supreme Court of North Dakota.

Nov. 10, 1977.

Ward M. Kirby, of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee.

Orell D. Schmitz, Bismarck, for defendant and appellant.

VOGEL, Justice.

The First National Bank and Trust Company of Bismarck appeals from a judgment holding it liable for the face amount of 17 checks, totaling $40,520.93, which were the property of Mott Grain Company. The checks were endorsed, without authority, by Vernon Baszler, the manager and one of the three owners in equal shares of Mott Grain Company, and converted to his own use. Nine of the checks had restrictive endorsements such as "Mott Grain Co./Vernon Baszler/For Deposit Only."

The remainder of the checks bore open endorsements such as "Mott Grain Co./Vernon Baszler." On some of the checks Baszler's signature was followed by descriptive words such as "Owner/Mgr." or "Mgr."

After a trial without a jury, the district court found that the bank was negligent in failing to determine the authority of Baszler to negotiate, other than by depositing to the credit of the grain company, that Baszler had no apparent authority to make the unauthorized endorsements, that they were forgeries, and that the bank was liable to the grain company for the amount of the checks. This appeal followed.

We affirm.

The bank was the authorized depositary of the grain company. The three owners of the grain company, two of whom were farmers and the third was Baszler, signed a "Corporate Authorization Resolution" prepared by the bank. Under that resolution the bank was designated as a depositary for the funds of the corporation. It further provided that

". . . any officer or other person hereinafter named is hereby authorized for and on behalf of this corporation to open or continue an account . . . that any officer or other person hereinafter named is hereby authorized for and on behalf of this corporation to endorse or cause to be endorsed and to deposit or cause to be deposited in such account or accounts from time to time checks, drafts and other instruments and funds payable to or held by this corporation.

". . . That checks, drafts and other withdrawal orders and any and all other directions and instructions of any character with respect to funds of this corporation now or hereafter with said Bank may be signed by any one of the [three officers] and said Bank is hereby fully authorized to pay and charge to such account or accounts any checks, drafts and other withdrawal orders so signed, and to honor any directions or instructions so signed, whether or not payable to the individual order of or de-

posited to the individual account of or inuring to the individual benefit of any of the foregoing officers or persons."

The bank argues that the corporate authorization gave authority to the bank to handle checks as directed by Baszler and that it was clearly erroneous for the trial court to find as a fact that Baszler was not clothed with apparent or ostensible authority to endorse checks presented to the bank, and that the negligence of the Mott Grain Company precludes its recovery.

The facts are not seriously disputed. All parties concerned knew that Baszler was the manager of the elevator and one of the stockholders of the corporation. All parties agree that no inquiry was ever made by the bank as to the authority of Baszler to negotiate the checks. The elevator had a rubber stamp bearing a restrictive endorsement which Baszler used to endorse checks deposited to the account of the grain company in the bank, but the rubber stamp was not used on the checks involved in the present action. The endorsements on the 17 checks were written in longhand.

### I

This case is governed by the Uniform Commercial Code, Chapter 41–01 and Chapter 41–03, N.D.C.C.

■ Leaving aside for the moment questions raised by the "Corporate Authorization Resolution" and arguments based on ratification or estoppel, there can be little doubt that the bank is liable to the payee of checks which are negotiated upon endorsements which are forged or unauthorized.

Under Section 41–03–41, N.D.C.C. (U.C.C. § 3–404), a payee of a check may recover from a bank which cashes a check on which the payee's signature is unauthorized.

An unauthorized signature is one which is either forged or made without actual, apparent, or implied authority. Sec. 41–01–11, subsec. 43, N.D.C.C. (U.C.C. § 1–201, § 43).

Forged endorsements are inoperative as signatures of the payee, whether they are endorsements for deposit [Sec. 41–03–27, N.D.C.C. (U.C.C § 3–205)] or in blank [Sec. 41–03–26, N.D.C.C. (U.C.C. § 3–204)], unless ratified or unless the owner is precluded from denying authority [Sec. 41–03–41, N.D.C.C. (U.C.C. § 3–404)].

A bank which negotiates checks bearing forged or unauthorized endorsements is therefore liable in conversion to the true owner of the checks. Cases so holding include *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973); *Stone & Webster Engineering Corp. v. First National Bank & Trust Co. of Greenfield*, 345 Mass. 1, 184 N.E.2d 358, 99 A.L.R.2d 628 (1962); *Gresham State Bank v. O and K Construction Co.*, 231 Or. 106, 370 P.2d 726, 100 A.L.R.2d 654 (1962); *Hermetic Refrigeration Co., Inc. v. Central Valley National Bank, Inc.*, 493 F.2d 476 (9th Cir. 1974); *Von Gohren v. Pacific National Bank of Washington*, 8 Wash.App. 245, 505 P.2d 467 (1973); *Fargo National Bank v. Massey-Ferguson, Inc.*, 400 F.2d 223 (8th Cir. 1968), relied on former North Dakota law which, however, apparently was similar to the Uniform Commercial Code in all respects important to this case. See *First National Bank in Minneapolis v. Plante*, 60 N.D. 512, 235 N.W. 135 (1931).

### II

■ The bank asserts that the general law stated above does not apply because of the terms of the "Corporate Authorization Resolution." It points in particular to the language, quoted above, authorizing any of the three owner-officers of the grain company to sign "checks, drafts and other withdrawal orders and any and all other directions and instructions of any character with respect to funds of this corporation now or hereafter with said Bank" and that the bank is authorized to "pay and charge to such account or accounts any checks, drafts and other withdrawal orders so signed, and to honor any directions or instructions so signed, whether or not payable to the individual order of or deposited to the individual account of or inuring to the individual benefit of any of the foregoing officers or persons."

Since the meaning of this terminology is unclear, we could simply hold that it is ambiguous and construe it against the party which drew it and submitted it to the grain company. *Farmers Elevator Co. v. David,* 234 N.W.2d 26 (N.D.1975); *Stewart Equipment Co. v. Hilling Construction Co.,* 175 N.W.2d 692 (N.D.1970); *Scott v. National Travelers Life Insurance Co.,* 171 N.W.2d 749, 37 A.L.R.3d 1444 (N.D.1969).

However, we believe that accepted methods of construing contractual language require us to hold that the language in question does not authorize the bank to negotiate checks payable to the grain company but endorsed by one of the officers and either cashed or deposited to his own account. The quoted language authorizes the bank to honor checks, drafts, and other withdrawal orders and directions and instructions of any character "with respect to funds of this corporation now or hereafter with said Bank . . ." While the use of the word "with" is unfortunate and less than clear, we understand the language to mean that money of the corporation on deposit with the bank is subject to being withdrawn by checks, drafts, or other withdrawal orders, or transferred as directed or instructed by any one of the officers. However, the language does not cover money which is not deposited with the bank or in its hands. When the improperly endorsed checks involved in this appeal were presented to the bank, they were not presented as funds of the corporation, but as funds of the individual officer endorsing them. The bank did not treat them as funds of the corporation, but treated them as funds of the individual. The checks therefore were not "funds of this corporation now or hereafter with said Bank" and were not within the description of the language quoted above in the "Corporate Authorization Resolution."

### III

■ The bank also argues that the negligence of the grain company provides the bank with a defense under Section 41–03–43, N.D.C.C. (U.C.C. § 3–406). That section provides:

"Any person who by his negligence substantially contributes to . . . the making of an unauthorized signature is precluded from asserting the . . . lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

The bank claims that it was a holder in due course. If the bank does qualify as a holder in due course, the grain company would be precluded from raising the claims and defenses available under Section 41–03–36, N.D.C.C. (U.C.C. § 3–306). A holder in due course is a holder who takes an instrument

"a. for value; and

"b. in good faith; and

"c. without notice . . . of any defense against or claim to it on the part of any person." Sec. 41–03–32, N.D.C.C. (U.C.C. § 3–302, § 1).

Section 41–03–34, N.D.C.C. (U.C.C. § 3–304), provides, in part:

"2. The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty."

In the present case it is clear that Baszler was depositing third-party checks payable to the grain company in his personal account and thus "for his own benefit." Under this analysis, the bank did not acquire the instruments "without notice" and therefore cannot claim the benefits of the status of holder in due course. As a holder (not a holder in due course), the bank is subject to the claims and defenses of the grain company.

■ Section 41–03–43, N.D.C.C. (U.C.C. § 3–406), provides the bank with the defense of substantial contributory negligence but only if the holder has acted "in accordance with the reasonable commercial stan-

dards of the drawee's or payor's business." The bank had notice of the claim of the grain company by virtue of Section 41–03–34 (U.C.C. § 3–304) and failed to investigate Baszler's authority to deal with the checks as his own. The bank therefore did not follow reasonable commercial standards, and the negligence, if any, of the grain company would not constitute a defense or preclude the grain company from asserting Baszler's lack of authority. *Von Gohren v. Pacific National Bank of Washington, supra.*

■ We have examined the record and transcript and find nothing done by the grain company which substantially contributed to the making of the unauthorized signature. The grain company passed the corporate resolution quoted above, designated a depositary, and provided the manager with a restrictive rubber-stamp endorsement to be used in negotiating checks payable to the corporation. It had quarterly audits made by auditors of its grain commission firm. The audits disclosed no shortages. When the auditor, for reasons not stated in the record, declined to continue making the audits, the manager told the other two owners that he was obtaining a new auditor but failed for several months to do so. The embezzlements came to light when the manager disappeared shortly before the arrival of the new auditor. He was subsequently tried and convicted on criminal charges arising out of the embezzlements. It is true that Baszler was generally known in the community as the manager and as one of the owners of the corporation, but this in itself is insufficient basis for estoppel or ratification. Much stronger cases for estoppel or ratification were held

insufficient in *Gresham State Bank v. O and K Construction Co., supra; Jackson v. First National Bank of Memphis, Inc.,* 55 Tenn.App. 545, 403 S.W.2d 109 (1966).

■ As mentioned above, no inquiry was ever made by the bank as to the authority of Baszler to cash corporate checks for his own use. There is no showing that it relied upon any acts of the grain company as a basis for cashing the checks. As pointed out in *Fargo National Bank v. Massey-Ferguson, Inc., supra,* quoting Section 3–03–03, N.D.C.C.,

"A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof." 400 F.2d at 227.

Without any showing that the bank relied upon the acts or admissions of the grain company, the negligence, if any, of the grain company would not be a cause of its loss and would not be a defense.

## CONCLUSION

The findings of the trial court were proper, there was no error, and the judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.