BRYAN M. BEERS and Darwin N. Beers, Copartners, Doing Business as B. M. Beers & Son, v. ARTHUR V. SCHALLERN.

(161 N. W. 557.)

Special contract — for construction of well — action on — burden of proof — what proof necessary to satisfy.

Where a suit is brought on a special contract to pay for the entire cost of the construction of a well, the burden of proof is upon the plaintiff to establish the contract sued upon. The burden is not met by proof which merely tends to show that the defendant only agreed to pay two thirds of such cost and that a third party was to pay the other third.

Opinion filed February 7, 1917.

Appeal from the District Court of Morton County, *W. L. Nuessle,* Judge.

Judgment for plaintiffs. Defendant appeals.

Reversed.

Statement of facts by BRUCE, Ch. J.

This is an action to recover for the price of digging a well. The plaintiff alleges a contract entered into by which the plaintiff agreed

to complete the well ready for use for the sum of $1.25 per foot, and alleges that he dug the same to a depth of 385 feet and is entitled to the sum of $481.89, less $9.36, for which he had agreed to credit the defendant, the value of an old pipe. The answer is a general denial. Under this general denial, however, the defendant was justified in attempting to show that the contract was other than that sued upon. See Anderson Mercantile Co. v. Anderson, 22 N. D. 441, 134 N. W. 36. The defendant, therefore, attempted to show that his agreement merely was to pay two thirds of the cost of digging the well, and that the plaintiff agreed to look to the tenant for the balance. He also undertook to show that he in no event agreed to pay for a greater depth than 35 feet.

In regard to the contract B. M. Beers, one of the plaintiffs, on direct examination, testified as follows:—

Q. Did you at that time have conversation with Mr. Schallern in regard to a well?

A. Yes.

Q. Now what was that conversation?

A. I told him that Webber had told me that he wanted to see me in New Salem that day, because they needed a well very bad at the farm; so I got on the train that afternoon and came down to Mr. Schallern's place of business. I went up there in the afternoon and asked him in regard to it. He said he needed a well there, and asked me the price. I told him we would dig tubular wells and guarantee *plenty of water* and charge $1.25 a foot from the top down, and that we would finish it up in good workmanlike manner so it would drain nicely; and would warrant it. He said that he needed just such a well. He told me: *"Mr. Beers, see my man, Mr. Webber. Go to him and see him, and if he agrees to pay one third of the price of the well, I will pay two thirds, and we will have a good well."*

Q. Did he tell you what to do if Mr. Webber agreed to pay one third?

A. He told me to go right ahead.

Q. *Did Mr. Webber agree to stand one third?*

A. *Yes, sir, he did.*

Q. How deep did you go with this well?

A. I went 385 feet.

Q. And what kind of a well is it?

A. Well, it is a never-failing well. It pumps day and night.

And on cross-examination he testifies:

Q. You say that Mr. Schallern stated that if Mr. Webber would pay one third of the well, that you could go ahead and dig it?

A. Yes, he asked me to see Mr. Webber and if he was willing to pay one third that he would pay two thirds.

Defendant testified concerning the conversation with B. M. Beers as follows:

Q. In this conversation at Mandan, what was said there?

A. He urged me, he came into the store and urged me, to have a well dug, that he would be glad to do the work for me. I protested that I did not want one at all, and at last I said, *"I will tell you, Mr. Beers, if Mr. Webber, I am willing to make another donation, and if Mr. Webber will pay one third of the expense, I would be willing to stand two thirds, but I would not go any deeper than 35 feet."* He had already stated the *price per foot.* I said that would be all right because there was all kinds of water there. I know the water is there. I wanted to have the well dug so it would not fall in. It was probably an hour's conversation we had, and I told him all my troubles about those wells, and he understood the whole situation. Then he left.

Q. Was anything said about what kind of a well it was to be, a bored well, or a drilled well?

A. It was a bored well, that is what I understood him to say. I told him that, I told him the whole situation, that I was getting this well 35 feet deep, *that I had all kinds of water there.*

Q. Did you tell him that you wanted a bored well?

A. I told him I wanted a bored well?

Q. Was there anything said about a drilled well?

A. Not a word.

Louis Webber, witness for plaintiff, on direct examination, testified:

Q. Are you a tenant of Mr. Schallern? Do you work on Mr. Schallern's farm?

A. Yes.

Q. And did you agree with Mr. Schallern to pay him, Mr. Schallern, for a part of this well?

A. No, sir.

Q. Did you agree to pay Mr. Schallern one third of the cost of this well?

A. Yes.

On cross-examination this witness testified:

Q. Before Mr. Beers commenced digging, he asked you if you would pay one third of the cost of the well did he not?

A. Yes.

Q. And did you tell him you were going to pay one third of it then?

A. I said straight, "Yes."

Q. Whom did you say you would pay, Mr. Beers or Mr. Schallern?

A. I only said that I would pay one third, nothing further.

The court instructed the jury that "the verdict will be either for the full amount claimed by the plaintiff in their complaint, together with interest from the 25th day of October, 1914, or it must be for the defendant. In other words, there can be no compromise, gentlemen, under the pleading and testimony in this case. Either there was an express contract, which must be proven, or there was not a contract. So as jurors then you must pass upon these questions and determine them from the evidence you have heard here under these instructions."

A verdict was rendered for the plaintiff, and the defendant seeks for a reversal of the judgment entered thereon on account of the refusal of the trial judge to direct a verdict in his favor for errors in the admission and exclusion of the testimony and for errors in the instruction to the jury.

*B. W. Shaw,* for plaintiffs and respondents.
*Langer & Nuchols,* for defendant and appellant.

BRUCE, Ch. J. (after stating the facts as above). We are satisfied that reversible error was committed in the giving of the instruction complained of, and that a new trial should be ordered. The plaintiff, in our opinion, failed entirely to prove the special contract set out in his complaint, and the defendants' theory of the case was not instructed upon. The testimony of the defendant was to the effect that the contract between him and the plaintiff was that he should only pay for

two thirds of the cost of construction, and that of the plaintiff himself proves nothing more. 22 Enc. Pl. & Pr. 564.

The judgment of the District Court is reversed and the cause is remanded for further proceedings according to law.