Percy P. DAVIS, Appellant,

v.

GUY F. ATKINSON COMPANY, a Corporation, and J. A. Jones Construction Company, a corporation, Appellees.

No. 14262.

United States Court of Appeals Ninth Circuit.

May 31, 1955.

G. H. Van Harvey, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., George A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for appellees.

Before DENMAN, Chief Judge, and ORR and FEE, Circuit Judges.

DENMAN, Chief Judge.

Davis appeals from a summary judgment of the district court dismissing his action on his complaint seeking damages for three alleged false representations made by appellees' agents in connection with his employment by appellees to serve as a dentist for their employees in Okinawa. Two of the occasions of the alleged misrepresentations are claimed to have been made in New York and one in California.

*The New York Misrepresentations.* One is that Davis, a dentist with a New York practice and a member of and employed by the Board of Health of New York, was induced to give up his practice and city employment and leave New York with his wife and travel to California and ship his dental machines and appliances there under a promise in an advertisement made by an appellees' employee in a New York newspaper that

he would have *a year's employment* by appellees as a dentist in Okinawa and that his transportation to and from Okinawa would be paid by appellees. This was followed by a second representation in New York by an employee of the corporations that Davis would be employed by them in Okinawa *for a year*, and that if he went to California the appellees there were ready to make such a year's contract with him.

Assuming this misrepresentation is an actionable tort for which Davis could recover damages for loss of business, transportation costs, etc., it appears that when he came to California the corporations refused to make such a contract with him. Then, instead of suing on the misrepresentations, he entered into a contract for his services in Okinawa for only as long as his employers desired it, a part of the consideration for that contract being his agreement to the effect that there had been no such misrepresentation. This appears in the disclaimer clause, section 22, of the California contract, providing:

"The Employee certifies to the contractor that he has read the foregoing agreement and that he fully understands its terms and conditions and further certifies that the foregoing terms and conditions constitute his entire agreement with the employer, and that no promises or understandings have been made other than those stated above;"

We think that in view of the provisions of this clause Davis has no right to recover on the statements in New York relative to his year's employment.

The second claimed misrepresentation in New York is a statement to Davis by a Mr. Gardner, an agent of the appellees, with whom the newspaper advertisement advised him to consult. Davis stated to Mr. Gardner, it appears from the answer to Interrogatory 4,

"that my wife and I could not accept the positions purely on a salary basis unless I would be allowed to engage in private practice. Mr.

Gardner stated that no private fees could be permitted because of government regulations which forbade the use of government property for private purposes. I then suggested that I be allowed to use certain equipment of my own for such purpose. Mr. Gardner, who had been in contact with the Sausalito office of Atkinson-Jones, said that he could conceive of no objection on the part of the management to such arrangement, and that further details would be worked out with the office in Sausalito."

We think that Mr. Gardner's statement of his conception as to his principals' views on the right of Davis to engage in private practice is not tortious conduct on which Davis could rely for a recovery of damages.

*The California Misrepresentations.* Before executing the above contract for his employment in Okinawa, Davis had a discussion with several persons, one of them being a Mr. Doyle, an employee of the corporations, which he describes as follows:

"I told Mr. Doyle, as I had previously told Mr. Gardner, that my wife and I could not accept the employment purely on a salary basis unless I would be allowed to engage in private practice. I also told Mr. Doyle that I would use my own equipment in my private practice. Mr. Doyle stated that the employees of his company were entitled to dental work of an emergency nature only, and that if they wanted other dental work done they would have to pay for such work. He told me that any work that I might do for any employee of his company, other than work of an emergency nature, would be between the patient and me, and that the patient would have to pay for such work. Mr. Doyle described the difficulties which had arisen between the previous dentist and management on Okinawa, wherein men who were treated were dissatisfied and unhappy with the type and

standard of dental services rendered them. I assured Mr. Doyle that I guaranteed all my dental work unconditionally on the basis of '100% satisfaction or entire fee refunded.' I also told Mr. Doyle that we had the necessary dental equipment and supplies ready for complete dental service and I requested permission for an extra weight allowance in shipping the equipment to Okinawa. He gave his approval for the extra weight shipment.

"I asked Mr. Doyle for a definite contract setting forth the provisions with regard to private work, but he told me that it would not be possible to sign such special contract because only a general contract was available for all employees. He stressed the fact before Mr. Fassett and Mr. Keenan that the contract with the employees called only for emergency dental work and that any work that we might do, other than work of an emergency nature, would be between the patient and myself."

Davis contends that these representations of the corporations' employee Doyle caused him to enter into the contract in which it was stated that his employment was terminable at the will of the appellees and in which he was not given the right to his private practice. With regard to the right to private practice, there was a specific provision, 15(c), that his professional conduct in Okinawa was controlled by the law and governmental regulations which prohibited his private practice. The contract also contained Section 22, the disclaimer clause above quoted.

■■ The question whether he can claim damages for so being induced by the corporations' employee Doyle to execute the contract with its disclaimer clause is one of California law. In California the provision of the clause "that no promises or understandings have been made other than those stated above" precludes any recovery from the innocent principal for prior false statements of his agent.

The controlling decision is Harnischfeger Sales Corp. v. Coats, 4 Cal.2d 319, 48 P.2d 662, 663, where the contract was for the purchase of a power shovel and the trial court awarded the purchaser damages from the selling corporation for fraudulent misrepresentations of its agent. On reversing the court held that the following provision in the contract:

" 'This agreement shall not be considered as executed, and shall not become effective until accepted by the vendee, and executed and approved by the president, or vice-president, or secretary of the vendor, and it is hereby further declared, agreed and understood that there are no prior writings, verbal negotiations, understandings, representations or agreements between the parties, not herein expressed.' "

precluded a recovery from the principal, the court further holding that the defrauded party could rescind the contract.

On this issue the Harnischfeger case relied on dicta in Gridley v. Tilson, 202 Cal. 748, at page 751, 262 P. 322, and Speck v. Wylie, 1 Cal.2d 625, at page 627, 36 P.2d 618, 95 A.L.R. 760. All three of these cases recognize the right of the party deceived by the misrepresentations to have the contract rescinded, a remedy not here sought by Davis.

The appellees contend that the amended complaint fails to state a non-California citizenship required to create a diversity jurisdiction, appellant relying on a mere statement of residence in New York. Appellant offers to amend to show diversity, as we have the power to do under 28 U.S.C. § 1653. Assuming that we allowed the amendment and that diversity were established, we nevertheless affirm the judgment of dismissal since appellant has no cause of action. See Brooks v. Yawkey, 1 Cir., 200 F.2d 663.

The judgment is affirmed.