**L. J. HABLAS, Appellant,**

v.

**ARMOUR AND COMPANY, a Foreign Corporation, Appellee.**

No. 16028.

United States Court of Appeals
Eighth Circuit.

Sept. 9, 1959.

J. F. X. Conmy, Bismarck, N. D. (Conmy & Donahue, Bismarck, N. D., was with him on the brief), for appellant.

E. T. Conmy, Fargo, N. D. (Conmy & Conmy, Fargo, N. D., and D. R. Kanzler, Chicago, Ill., were with him on the brief), for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff, L. J. Hablas, from final judgment dismissing his complaint against defendant, Armour and Company, for damages for fraud and tortious discharge.[1] Plaintiff, as a result of the termination of his employment by defendant, has lost all rights in defendant's pension fund, except the right to the return of his contributions.

Jurisdiction is based upon diversity of citizenship and the requisite jurisdictional amount.

Plaintiff was continuously employed by the defendant from 1910 until his discharge on July 15, 1955, except for a period of approximately two years during which he was engaged in military service during World War I. Defendant in 1911 established the Armour and Company Pension Fund. On December 12, 1912, plaintiff became a participant in, and a contributor to, such fund. In 1925 the original pension plan was superseded by Armour and Company Employees' Pension Fund, and in 1945 defendant afforded its employees additional benefits through Armour and Company Employees' Supplemental Pension Fund. Plaintiff was a participant in all of said plans and paid all contributions required of him until his discharge.

Defendant, at the time the various pension plans were put into operation, furnished its employees, including plaintiff, with printed booklets setting out the terms of the pension trust and the applicable rules and regulations. Plaintiff admits receiving such booklets. He testified that he read the booklet on the first plan, and knew it contained the provision that employees remained subject to discharge at will. Plaintiff, at the time he became a participant in the 1911 pension plan, signed an agreement which reads in part:

"I hereby agree to become a contributor to, and participate in, the Armour & Company Pension Fund.

"I * * * understand that the employment obtained under this application may be terminated at the pleasure of either employer or employe without previous notice."

The 1925 pension trust provides that the pension fund shall consist of such sums of money as Armour and Company,

---

1. Defendant filed a counterclaim against plaintiff. The jury found against defendant on the counterclaim. The court in its final judgment dismissed the counterclaim. Defendant has taken no appeal from the dismissal of its counterclaim. Consequently, the counterclaim requires no consideration.

or any of its subsidiaries, may from time to time contribute to it, the contributions of employees, and the earnings derived from investment of monies belonging to the fund. Pensions are to be paid only out of the pension fund. The income, capital, and surplus of Armour and Company shall not be liable for the payment of pensions. The management and distribution of the fund shall vest in and be controlled by trustees. The agreement, among other things, specifically provides:

"* * * Neither the creation of said Fund, nor any act, promise or representation, either by any of the officers, directors or employees of Armour and Company, or of any of its subsidiary or affiliated companies or corporations, shall confer any legal rights or privileges upon any employe or pensioner, other than set forth in these rules and regulations, nor give to any employe the right to be retained in the service. All employes remain subject to discharge as always, in the same manner and to the same extent as if the Fund had never been created.

* * * * * *

"In case of voluntary resignation, or dismissal, of any employe from the service of Armour and Company, or any of its subsidiary or affiliated companies or corporations, all contributions made by him or her to the Pension Fund, less any amount which he or she may be owing to Armour and Company, or any of its subsidiaries or affiliated companies or corporations, shall be returned without interest, and such employe's interest in the Fund shall thereupon cease."

Provisions of the 1945 Supplemental Pension Fund plan are in substance the same as the provisions just referred to. On September 28, 1945, the plaintiff signed and delivered to the trustees a statement reading as follows:

"I have received the Trustees' letter of Sept. 21st, 1945 with regard to the establishment of the Armour and Company Employes' *Supplemental* Pension Fund—also the Trust Agreement embodying the rules and regulations governing the Fund. This document embodies the terms and conditions under which I become a participant in and a contributor to the Armour and Company Employes' *Supplemental* Pension Fund."

Plaintiff's employment with defendant originated in Chicago. There was no written contract of employment. No fixed term of employment was agreed upon. Plaintiff as a witness testified, "I knew that I could quit whenever I wanted to and that they could discharge me whenever they wanted to. I knew that." Plaintiff in his brief admits that his employment was for an indefinite period.

Under defendant's pension plans employees are eligible for retirement at age 60. Plaintiff was discharged[2] by defendant's vice president, St. John, at defendant's home office in Chicago on July 15, 1955. At the time plaintiff filed his complaint he thought that he was 57 years of age at the time of his discharge and so alleged, but he has now established that he was 59 years of age at the time of his discharge. The plaintiff has not yet received refund of the contributions which he has made and to which he is entitled, because he has refused to sign the release required by the trustees.

Plaintiff's cause of action is based upon two theories, to wit:

---

2. Mr. St. John advised plaintiff that he was discharged for conduct unbecoming an Armour management employee. Much of the record bears on the issue of whether plaintiff was guilty of misconduct. The jury under the court's instructions found that the plaintiff was not guilty of such misconduct as to warrant his discharge. Inasmuch as we reach the conclusion that the defendant had an absolute right to discharge the plaintiff with or without cause, we deem it unnecessary to detail the facts bearing on the issue of whether cause existed for plaintiff's discharge.

1. Plaintiff was induced to continue in defendant's employment by fraudulent representations to the effect that his employment would continue until he reached retirement age; and

2. Plaintiff was tortiously discharged.

The case was tried to a jury. At the close of plaintiff's evidence and again at the close of all of the evidence, defendant moved for a directed verdict upon the following grounds, among others:

"First: There is a total failure and a total absence of proof to support the material allegations of plaintiff's complaint or to show any right of recovery.

"Two: There is no sufficient testimony to show fraud or fraudulent representations on the part of the defendant which would entitle the plaintiff to any recovery against the defendant.

"Three: There is no sufficient testimony to show that any authorized agent of the defendant made any representations to this plaintiff that were fraudulent or false or any such representations that he could rely upon as constituting a representation or an agreement or promise to continue his employment until he reached retirement age or any promise with knowledge of its falsity or without any intention of performing it.

\* \* \* \* \* \*

"Six: That the undisputed testimony shows plaintiff's employment was for an indefinite time and at will and with the right to quit in the plaintiff and the right to discharge in the defendant so there was no wrongful or unlawful discharge."

The court overruled the motions for a directed verdict and submitted the case to the jury. Verdict was returned for the plaintiff. Thereupon, defendant filed a timely motion, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for judgment in accordance with its motion for directed verdict. That motion was sustained, the court stating:

"The Court, being of the opinion that plaintiff's evidence was insufficient as a matter of law to sustain *any judgment in his favor*, concludes that a verdict in defendant's favor should have been directed."

The judgment previously entered upon the verdict was vacated, and plaintiff's action was dismissed with prejudice. This appeal is from such dismissal.

If the evidence is insufficient to support a judgment for the plaintiff on both of the theories advanced by the plaintiff, the trial court's judgment of dismissal must stand. We shall separately consider the theories advanced by the plaintiff in support of his contention that the dismissal of his cause of action was erroneous, considering first the fraud issue.

Plaintiff's theory is that he was induced to continue in the defendant's employment by fraudulent representations made by defendant's officers and employees implying that he would be retained as an employee until he became entitled to retirement pay, that said representations in the form of promises were false and made without any intention of fulfilling them and were made with the intention of deceiving plaintiff, and that plaintiff relied on such representations and was deceived thereby to his detriment.

The parties are in disagreement as to which law governs, plaintiff urging that North Dakota law applies while defendant contends that Illinois law controls.

 The conflict of laws rule of the state in which the Federal District Court sits must be applied in diversity cases. 28 U.S.C.A. § 1652; Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Since this case was tried in North Dakota, the conflict of laws rules of that state must be applied. Restatement of Conflict of Laws, § 377, Note 4, provides, "When a person sustains loss by

fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." The Restatement rule has been generally recognized and followed. Davis v. Guy F. Atkinson Co., 9 Cir., 222 F.2d 824; Smyth Sales, Inc. v. Petroleum Heat & Power Co., Inc., 3 Cir., 128 F.2d 697. We have found no North Dakota cases on the choice of law rule as applied to fraud cases. The North Dakota court in a tort case based on negligence followed the usual rule that the law of the place of injury governs. Mann v. Policyholders' Nat. Life Ins. Co., 78 N.D. 724, 51 N.W. 2d 853. We have no reason to believe that North Dakota would not apply the same rule to fraud cases.

■ Here the injury was plaintiff's discharge. The hiring and the firing both occurred in Illinois. The pension fund was also being administered there. The trial court filed no opinion so we do not have the benefit of his views as to the controlling law. It seems clear to us that Illinois law governs.

The fraud claim is based upon four transactions between the plaintiff and defendant's officers and employees, which we now summarize:

1. In 1934 plaintiff was dissatisfied with his salary. In the course of his negotiations for a salary increase, plaintiff talked with defendant's then president, Mr. Lee. Plaintiff's version of that conversation, as reflected by his testimony is:

" * * * when I went into Mr. Lee's office, he came forward, shook hands, said, 'Hello, Louis. What's this I hear about you leaving Armour and Company?' I said, 'Well, Mr. Lee, I am not anxious to leave Armour and Company. You people have been very good to me, but I have had a very wonderful offer from the people who are starting business over at the public stockyards, and I simply can't pass it up without seeing whether Armour and Company wants to come close to matching what they offer.' And then Mr. Lee said, 'Well, Louis, I would like to have a long visit with you and go over some of these things, but I am getting ready to make a trip.' I believe he was going to Europe at that time. He said, 'I am getting ready to leave the office in a few minutes, but I want you to know this: We think highly of you, and I am pretty sure that you would make a success of whatever business you go into. However, we don't want you to leave Armour Company, we would like to have you stay with us. You have been with us many years, and you have a good future with Armour. * * * You have quite a number of years lined up before you now as far as your pension goes, and that's something to take into consideration in making a final decision.' "

Plaintiff ultimately received the salary increase he sought and remained in defendant's employ.

2. In 1951, plaintiff again opened negotiations for, and ultimately obtained, a further salary increase. Plaintiff testified that in the course of the salary negotiations he had a conversation with Mr. Pyle, defendant's office manager at West Fargo, North Dakota, which plaintiff relates as follows:

" * * * he [Mr. Pyle] called me to the office and wanted to know what I was going to do about the demand I had made for the additional $500.00, and I told him that this would probably be my last chance to demand an increase and that I was going to hold out for that $500.00; and with that he said, 'Well, I think you are crazy. You simply can't afford to pass up all the pension rights you have coming for the sake of $500.00.' "

3. In 1954, plaintiff received a letter from defendant calling attention to benefits of defendant's pension plans and containing some explanatory circulars. There is no contention that any of this material contained any false statements.

4. In 1955, while plaintiff was being questioned at defendant's home office

with reference to his alleged misconduct, defendant's auditor told plaintiff that if he didn't tell the truth about the Goldberg deal he was running a chance of losing about $100,000 in pension benefits.

In Repsold v. New York Life Ins. Co., 7 Cir., 216 F.2d 479, the court in a well considered opinion, which cites and quotes numerous Illinois decisions, reaches the conclusion that under Illinois law a promise, even if made with an affirmative intent not to perform it, cannot be made the basis of an action for fraud. The court recognized the existence of contrary authorities on this point, citing 37 C.J.S. Fraud § 12, p. 240; and Busam Motor Sales v. Ford Motor Co., 6 Cir., 203 F.2d 469, applying Michigan law.

We are satisfied that the Repsold decision fairly reflects the present status of Illinois law on the issue we are here considering.

Plaintiff admits the statements upon which his fraud allegations are based are promises. The trial court's dismissal of the fraud charges in the complaint is fully supported by Illinois law.

Although plaintiff urges that North Dakota law should govern, he cites no persuasive authority to support such contention. If North Dakota law were applied, the result would be the same. It is perhaps true that under North Dakota law fraud can be based upon a promise made without the intention to perform it. See § 9–0308, subdivision 4, NDRC 1943. However, under North Dakota law and the law generally, the burden is upon the party asserting fraud to establish the elements of fraud. Among such elements is an intent to deceive. Coman v. Williams, N.D., 65 N.W.2d 377, 379; Zimmerman v. Kitzan, N.D., 65 N.W.2d 462, 467; Tamm v. Ford Motor Co., 8 Cir., 80 F.2d 723; Roosevelt v. Missouri State Life Ins. Co., 8 Cir., 78 F.2d 752; Fidelity and Deposit Co. of Maryland v. Drovers' State Bank,

8 Cir., 15 F.2d 306; 37 C.J.S. Fraud § 19, p. 254.

Proof of fraud must be clear and convincing. Fraud is never presumed. Section 31–1103, subdivision 19, NDRC 1943, creates the disputable presumption that "Private transactions have been fair and regular." Where circumstantial evidence is relied upon to show fraud, it is not sufficient that circumstances raise a suspicion of fraud. Engen v. Kincannon, N.D., 79 N.W.2d 160, 166.

It is extremely doubtful whether any promise of continued employment can be inferred from the statements made by defendant's representatives to the plaintiff. Plaintiff was aware at all times of his rights under the pension plans, and likewise had knowledge of the provision that the employment could be terminated at will by either the employer or employee, with or without cause. We believe that the evidence upon which plaintiff relies, which has heretofore been set out, shows that plaintiff was bargaining primarily for higher wages and not for a modification of the termination provisions of his employment and pension contracts. If promises of continued employment could possibly be inferred from the evidence before us, the plaintiff would still fail in establishing his right to recover, because there is absolutely no evidence to support a finding that the promises were made with any intent not to fulfill them or with any intent to deceive the plaintiff.

President Lee died shortly after his 1934 talk with the plaintiff. There is no evidence which would support a finding or inference that either Mr. Lee or the company, at the time of the 1934 conversation, had any intention to terminate plaintiff's employment before his pension rights vested. The situation with reference to plaintiff's conversations with Mr. Pyle is much the same. There is absolutely no evidence to show that Mr. Pyle, the West Fargo office manager, at the time he made the statement, here-

inabove quoted, had any intention to terminate plaintiff's employment before pension rights vested, or that the company in fact at that time had such an intention.

We have fully considered all of the evidence bearing on the fraud issue, including the evidence not discussed, and we are convinced that upon the basis of both Illinois law and North Dakota law the evidence is wholly insufficient to establish plaintiff's claim based upon fraud.

We now reach the tortious discharge issue. Plaintiff insists the tortious discharge feature of his action is predicated in tort, although he concedes contractual relations are involved. We deem it unnecessary to determine whether the tortious discharge claim is based on contract or tort, as we are satisfied that plaintiff cannot recover in either event.

■■■ The governing law on this branch of the case is also Illinois law. If the action is in tort, Illinois law governs for the reasons stated in the fraud division of this opinion. The validity of the employment contract is also controlled by Illinois law since the contract was made in Illinois. Storing v. National Surety Co., 56 N.D. 14, 215 N.W. 875, 876; Douglas County State Bank v. Sutherland, 52 N.D. 617, 204 N.W. 683, 685; Restatement of Conflict of Laws, § 332.

Plaintiff, to prevail, must plead and prove that defendant in terminating his employment has violated some duty defendant owed to plaintiff. Plaintiff's pleading is that defendant has discharged plaintiff without having good cause so to do. We look to the employment arrangements which existed to determine plaintiff's right to continued employment.

■■■ It is apparent that no contract existed between plaintiff and defendant for employment for any fixed period. Under Illinois law employment contracts not expressly made for a fixed period are for employment at will, and may be

terminated by either party without cause. This is true even if the employment is described as permanent. Meadows v. Radio Industries, Inc., 7 Cir., 222 F.2d 347, 349 (involving Illinois law and citing supporting Illinois cases); White v. American Electric Fusion Corp., 328 Ill.App. 128, 65 N.E.2d 234. For authorities outside Illinois supporting this view, see: Harper v. Southern Coal & Coke Co., 5 Cir., 73 F.2d 792; J. E. Hanger, Inc. of Washington, D. C. v. Fitzsimmons, 50 App.D.C. 384, 273 F. 348; 35 Am.Jur. Master & Servant, §§ 26 and 34. In the White case, supra, the Illinois court states (at page 234 of 65 N.E.2d):

"A hiring at a monthly or annual salary, if no period of duration is specified in the contract, is presumed to be at will and either party may terminate the hiring at his pleasure without liability."

■■■ Moreover, plaintiff has admitted that he was at all times free to terminate his employment at will. This being true, the purported employment contract is void for want of mutuality of obligation. In Meadows v. Radio Industries, Inc., supra, the court states (at page 348 of 222 F.2d):

"It is well settled in Illinois that whenever a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. * * * 'Mutuality of obligation means that both parties are bound or neither [is] bound. In other words there must be a valid consideration. Without a valid consideration, a contract cannot be enforced in law or in equity.' * * * "

Supporting Illinois cases are cited in the opinion. North Dakota law also recognizes that mutuality of obligation is an essential element of a valid contract. Great Northern Ry. Co. v. Sheyenne Telephone Co., 27 N.D. 256, 145 N.W. 1062; Jacob Schmidt Brewing Co. v. Minot Beverage Co., D.C.N.D., 93 F. Supp. 994.

This court has refused to enforce agreements where mutuality of obligation is lacking. E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238; Meredith v. John Deere Plow Co., 8 Cir., 185 F.2d 481. In the Du Pont case the manufacturer cancelled an agency contract terminable at will of either party after the agent had gone to considerable expense to develop the agency. We recognized the hardship involved, but observed (at page 233 of 64 F.2d):

"* * * However, the injury done to the Reno Company was one against which its contract, rather obviously, did not afford protection. As was said by Judge Stone in the Woerheide Case [Woerheide v. Barber Asphalt Paving Co.] (at page 204 of 251 F.): 'The entire trouble is found in the contract itself. It was not at its making strong enough to hold. * * *'"

The situation here is much the same.

As heretofore shown, plaintiff has agreed that the instruments creating the pension trust embody the terms and conditions of his participation therein. The trust instruments provide that all employees remain subject to discharge at will, and that employees' rights in the pension fund upon discharge are limited to the return of the contributions made by the employee. Plaintiff is bound by the contractual provisions of the trust instruments to which he assented.

The factual situation in the Repsold case, supra, which involves Illinois law, is very similar to that presented in this case. There the agency was terminated without any cause therefor being assigned or established. The pension contract provided for the termination of the agency at will, and the termination of the agency ended all rights of the agent in the pension funds. The court, in holding that the agent had no cause of action for loss of his pension rights, states (at page 486 of 216 F.2d):

"Defendant had a legal right to pursue any course provided for in the contracts. Its motives in so doing are not subject to the attack which plaintiff embodies in his charge that the termination of his contracts and deprivation of his rights were in furtherance of an intent existing in defendant's mind when the contracts were executed. Under Illinois law, one who merely exercises his legal rights is not thereby chargeable with fraud. * * *

"If plaintiff feels that defendant in relying upon the printed language in the contracts and Nylic agreements, is treating plaintiff harshly, he is confronted with the fact that the instruments that permit this treatment were those which he voluntarily executed. The court cannot make a new contract for the parties."

In our present case the plaintiff has failed to prove that the defendant has violated any duty which it owed to him. No violation of any statutory duty has been alleged or proved. No contractual obligation has been breached. Plaintiff has failed to prove that defendant had any duty of any nature, under the circumstances of this case, to retain plaintiff as an employee. On the contrary, it is clearly established that either employer or employee had a right to terminate the employment at any time with or without cause. Plaintiff had agreed to the trust terms so providing and limiting his recovery upon discharge to the contributions that he had made to the fund.

Since the defendant had an absolute right to discharge the plaintiff, it is unnecessary to consider the substantial and conflicting evidence bearing on the question whether cause existed for the discharge. Defendant's exercise of its lawful right to discharge the plaintiff cannot constitute the basis for plaintiff's cause of action for wrongful discharge.

Affirmed.