F. C. KAIN, Appellant,

v.

ARMOUR AND COMPANY, Appellee.

No. 22268.

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1966.

Rehearing Denied Feb. 23, 1966.

Jones, Senior Circuit Judge, dissented in part.

James H. Milam, Lubbock, Tex., Crenshaw, Dupree & Milam, Lubbock, Tex., for appellant.

J. A. Gooch, Fort Worth, Tex., Wm. H. Evans, Lubbock, Tex., Evans, Pharr, Trout & Jones, Lubbock, Tex., Cantey, Hanger, Gooch, Cravens & Scarborough, Fort Worth, Tex., for appellee.

Before JONES, Senior Judge,[*] and GEWIN and BELL, Circuit Judges.

### PER CURIAM:

Appellant was discharged by Armour and Company after employment of twenty-seven years. The contract of employment provided that the employment relationship might be terminated by either party without previous notice.

This action against Armour was based on two contentions. First, appellant alleges that certain promises relative to continued employment, on which he acted, were fraudulent in that they were made by Armour with the affirmative intent not to perform. Second, it is said that Armour breached an agreement to place appellant under an amended pension plan adopted subsequent to his discharge.

The court directed a verdict against appellant at the close of his case. The test to be applied on this appeal is whether under appellant's evidence, considered in the light most favorable to him, and with every inference therefrom given full effect, there is evidence from which the jury could have found in appellant's favor. See Hogan v. United States, (5 Cir. 1963) 325 F.2d 276, for statement of the rule.

So tested, we find no evidence to support the charge of fraud nor was there sufficient proof to establish the claimed agreement regarding the amended pension plan. Cf. Hablas v. Armour and Company, (8 Cir. 1959) 270 F.2d 71.

Affirmed.

JONES, Senior Judge,[**] concurring in part and dissenting in part:

Appellant, F. C. Kain, entered the service of Armour and Company as an employee in 1933 when he was 25 years of age. He worked for Armour in various capacities until August 1, 1960, when he was 52 years of age. At the time he entered appellee's service he signed a written agreement which stipulated that the employment "may be terminated at the pleasure of either employer or employee without previous notice." At that time the company had a pension plan to which Kain contributed throughout the years of his employment.

On August 1, 1960, Kain was called to Dallas and told by Mr. St. John, a vice president of the company, that pursuant to instructions from Chicago his services were being terminated as of that date. He asked why he was being dismissed but was given no reason. He had been promoted from time to time, had held several important positions, and no substantial complaint had ever been made as to the quality of his services.

Even if this were the whole story it would seem harsh, in view of the fact that appellant had given the prime and bloom of his youth and the best years of his life to the service of the company. Nevertheless it would have been the exercise by the company of a valid contractual right.

But that is not the whole story.

In 1954, Kain was offered a better salary from a competing firm. He was urged by two officials of the company to stay with Armour. They made repre-

---

[*] Of the United States Court of Claims, sitting by designation.

[**] Of the United States Court of Claims, sitting by designation.

sentations to him about the pension advantages that he had already earned and the permanency of his employment with Armour.

Kain had a right to leave the service at that time. If he had done so that would have ended the relationship, the contract would have been at an end, and he would have been entitled only to a return of his contributions to the pension fund. But upon the urging of the company officials he waived that right.

The record does not show that these men had authority to change the contract of employment. And no definite commitment was made. Their statements do not rise to the dignity of a guarantee, but sink to the level of persuasive trade talk. Hablas v. Armour and Company, 270 F. 2d 71 (8 Cir. 1959).

The strongest statement was made by Mr. St. John, the Southwest Manager, in a conversation with Kain at Kansas City in 1958, before his move to Lubbock. In order to induce Kain to move to Lubbock he stated that it was a wonderful opportunity and that appellant could go there and "work through until your retirement." [R. 47–48.]

Even this is not sufficient to support a finding of fraudulent misrepresentation. I agree with my colleagues in affirming the lower court on this issue.

However, I believe the commitment that was made at the time of the discharge on August 1, 1960 falls into a different category. This was a commitment that if Kain would leave his accumulated contributions with the company he would be placed under the new retirement plan then being worked out, provided the plan became effective within one year. Haag v. International Telephone and Telegraph Corp., 324 F.2d 205 (7 Cir. 1963); Gediman v. Anheuser Busch, Inc., 299 F.2d 537 (2 Cir. 1962); Mullaly v. Carlisle Chemical Works, Inc., 184 F. Supp. 701 (D.C.N.J.1960).

This assurance was given at the same meeting and at practically the same time of the notice of the dismissal in Dallas. The entire interview lasted only 2 hours.

Here is cross-examination by Mr. Gooch for Armour:

Q. All right. Now, how long did you and Mr. St. John have a discussion that night that he told you you were fired?

A. Approximately two hours.

Q. And during that conversation, was there anything said, and if so, by whom, about the Armour's Pension Plan?

A. Mr. St. John told me almost immediately, just after telling me that I was fired, that there was a plan up for consideration and that if it were approved, that I would get my pension under that plan.

Q. Did he say if it was approved within a certain length of time?

A. He mentioned the period of a year. [R. 51.]

It was all so intimately linked as to be one transaction.

This statement was made by a man who was Vice President of Armour, and who admittedly had the right to hire and fire. The following is cross-examination by Mr. Gooch, representing Armour:

Q. By the way, what is the chain of command in so far as you were concerned at Lubbock; was it St. John then Borchers and [43] then Prince?

A. That's right.

Q. In other words, it had either been Borchers, Prince or St. John who could have terminated you or hired you, is that right?

A. Yes, rehired, are you speaking of?

Q. Yes.

A. That's right.

Q. In other words, that was the chain of command, Prince, Borchers and St. John, is that correct?

A. That's correct.

Q. Nobody else had any authority to rehire you, did they?

A. No, I don't think so. [R. 71–72.]

Regardless of whether St. John and the chain of command could have discharged Kain at that time without promise of pension rights, they did not do so. They apparently recognized that he had some equities by virtue of long years of faithful service.[1]

Kain, pursuant to St. John's suggestion, left his contribution money with the company, saying that he would leave it and see what the new plan would be. This was apparently acceptable to St. John. He intimated nothing to the contrary.

There was thus a binding new agreement. It was put into effect within less than one year. There was adequate consideration. Appellant left with the company his 27 years of contributions to the pension fund. That was the only condition asked and it was met. Then there was the natural recognition of 27 years of loyal service which was shown by the persuasive talks for him to remain, and by the promotions he had received.

> There seems no difficulty, however, if the parties so intend in substituting a conditional agreement by way of novation for an obligation which was originally absolute; nor is there any difficulty in substituting an absolute new agreement for one which was originally conditional. The only question involved is what the parties in fact agreed upon. [6 Williston, Contracts § 1873 (Rev. Ed.). See also §§ 1868 and 1869 same volume.]

Some 2 months later the company sought to unilaterally change the agreement made by St. John. It demanded as a further condition to participation in the new pension plan that Kain sign an agreement within 10 days waiving all other rights of any kind or character against Armour. This demand was made before the terms of the new plan were known. Plaintiff was asked thus "to buy a pig in a poke." There is not the slightest evidence of any right to thus unilaterally change the agreement.

Plaintiff did not sign within 10 days and he was sent a check in the exact amount of the contributions made during the 27 years of service. It was returned, again sent, and kicked back and forth, and has not yet been cashed. It is agreed however that appellant may still have this amount.

Within the year the terms of the new plan were made known. Kain then advised St. John that he would accept the plan, but was advised that he could not get it. This was the same Vice President who had assured him in the year 1958 that he could go to Lubbock and stay until retirement. He now told him at the very time of notice of dismissal, August 1, 1960, that he would be placed under a new pension plan that was being worked out. But because, forsooth, he had not signed the new unilateral 10-day ultimatum, he was now told that he could not get anything. When one considers the background of statements, promises and the agreement, would any reasonable man have signed, unless he were in desperate need?

An individual or a company may exercise its contractual rights in whole or in part. It may also waive them in whole or in part. Appellant had a right to leave the company in 1954. If he had done so it would have ended the entire written contract, subject only to a return of his contribution to the pension fund. He waived that right subject to what he thought was the privilege of working until retirement. In this he was mistaken.

The company ended the written contract relationship in 1960, but linked with that action and as an integral part of it was a new contractual relationship that appellant would be placed under the new pension plan being worked out, subject only to the condition that he leave his 27-year contributions with the company, which he did. He thereby became en-

---

1. This is especially true since St. John persuaded Kain to waive his right to quit in 1958, by telling him at that time he "could come to Lubbock and play out the string" by which he meant "you work through until your retirement."

titled to participate in the new plan. The unilateral effort on the part of the company to attach new conditions to the agreement some 2 or 3 months later were ineffectual. Certainly these facts could have been found, if submitted to the jury, and the issue should have been submitted. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

By every tenet of fair play that I have known from my youth all the way, this action on the part of the company was unduly exacting. The chain of disclosures in this case precludes any other reasonable conclusion. This seems especially true since most industrial concerns, in recent years, have tended to liberalize rather than restrict the pension plans of their employees. Had appellee chosen to put on its testimony these difficulties might have been explained away. But we are not faced with that alternative. The *Hablas* case, supra, did not have this particular issue, and is therefore inapplicable to this phase of the case.

The record is sufficient to justify a jury's finding that a binding commitment was made on the part of the company to place Kain under the new pension plan. Both of the conditions were met. In fact, it is apparent that Mr. St. John, who had the right to hire and fire employees, was reluctant to discharge Kain unconditionally. He had complimented him as the best plant manager in the country on the Saturday before calling him to Dallas to dismiss him on the following Monday. He was the one most familiar with his work. At any rate, he made the outright commitment in connection with the discharge.

I believe the motion for an instructed verdict should have been overruled on this phase of the case. The facts on this part of the case might have well been more fully developed. At best the company is standing on a technicality, that in the light of this record is carried forward into almost a sheer legalism. Somewhere along the way the spirit and purpose of the law is lost and lies in an unmarked spot. I cannot believe that the law is as lifeless as that. In law as in life there is always a human equation and it lies deep in the undisclosed features of what should be made a complete record.

This is not a criticism of the company which is the appellee in this case. I have great respect and admiration for the packing industry of this country. These organizations are distinctively American. They are a vital part of the greatest marketing system in the world. But, they too can make mistakes and I am persuaded to believe that a mistake was made in this instance.

I respectfully dissent on the second phase and would remand this issue to the trial court.