**STEWART EQUIPMENT CO. Ltd., a Corporation, Plaintiff and Appellant,**

v.

**HILLING CONSTRUCTION CO., Inc., and Nelson Paving, Inc., Defendants and Respondents.**

**Civ. No. 8590.**

Supreme Court of North Dakota.

March 25, 1970.

Bjella & Jestrab, Williston, for plaintiff and appellant.

McIntee, Whisenand & Calton, Williston, for defendants and respondents.

STRUTZ, Judge.

This is an appeal by Stewart Equipment Co. Ltd., a Canadian corporation (hereinafter "Stewart Co."), from a judgment entered on August 18, 1969, dismissing the plaintiff's complaint against the defendant corporations. The case was tried to the court without a jury. No witnesses were called at the trial, counsel having stipulated that the court might consider facts presented by the parties in the form of affidavits, the same as if the persons who signed such instruments had personally testified in court.

The plaintiff brings its action for breach of an alleged written contract with the defendants, under the terms of which the

plaintiff asserts that it was agreed that the plaintiff would conduct an auction sale of certain heavy construction equipment owned by the defendants. It was estimated that the equipment to be sold at such auction was of the approximate value of $300,000. Under the terms of the purported contract, the plaintiff was to receive a commission of ten per cent on the gross sale price bid for the property at the auction.

The trial court entered judgment dismissing the plaintiff's complaint, and the plaintiff prosecutes appeal to this court, demanding trial de novo.

The purported written contract upon which the plaintiff relies is in the form of a letter addressed to the plaintiff corporation and is signed by the president of the two defendant corporations, and is, in words and figures, as follows:

"March 13th, 1967

"Stewart Equipment Co. Ltd.
Airdrie, Alberta, Canada

"Gentlemen:

"This will be your authority to sell the entire equipment assets of Hilling Construction Co. Inc. as listed on schedule A and of Nelson Paving Inc. as listed on schedule B by unreserved auction at or near Williston, North Dakota on one of the following dates. May 22nd, 1967, May 24th, 1967 or May 29th, 1967. The date to be mutually agreed on.

"The equipment will be prepared for sale, cleaned and painted where necessary and will be at the sale site at least one week before the sale date.

"It is understood and agreed that we will not sell any of the equipment privately.

"A commission of 10% (payable in Canadian Funds) of the gross amount of the sale is to be deducted by Stewart Equipment Co. Ltd. and the net proceeds to be paid to us no later than three days following the sale.

"Yours very truly,

"[Typewritten] E. E. Hilling
President.

"[Signed] E. E. HILLING

"Witness

"[Signed] M. STEWART"

It is conceded by both parties that Stewart Co., having received word that defendants were contemplating a sale of all of their construction equipment, did contact the defendants for the purpose of being retained to conduct such auction sale. It is not disputed that representatives of the parties met on several occasions and that they discussed the terms and conditions for a proposed sale of the defendants' equipment, with Stewart Co. conducting the sale. The plaintiff's president asserts that, after several meetings, the defendants gave him the letter upon which plaintiff now relies as a contract, authorizing Stewart Co. to conduct such sale for and on behalf of the defendants. The letter relied upon as a contract by the plaintiff states that the sale was to be held on one of three dates mentioned therein, the exact date for the auction sale to be mutually agreed upon by the parties thereafter.

Defendants, on the other hand, allege that no contract ever was entered into between the parties. They point out that the said letter was given for the sole purpose of permitting the plaintiff to try to induce McLaughlin, Inc., of Great Falls, Montana, which was believed to be contemplating a sale of construction equipment, to list at least a portion of its equipment for sale on the day before or the day following defendants' sale. Defendants assert that the plaintiff had represented to them that if McLaughlin could be induced to so sell a portion of its equipment, more and better buyers would be attracted to the sales. The defendants further contend that the letter relied upon by Stewart as a contract was not given with any intent of entering

into an agreement with the plaintiff by which the plaintiff would be authorized to conduct such sale, and that the instrument is not an enforceable contract.

Both parties agree that, upon receipt of the letter which the defendants gave to the plaintiff, the president of the plaintiff company did go to Great Falls, where he contacted McLaughlin. However, McLaughlin was not interested in selling any of its equipment at auction, and the plaintiff was informed that McLaughlin had decided to sell at private sale. The plaintiff's president asserts that he so informed E. E. Hilling, defendants' president, by telephone the day after his meeting with representatives of McLaughlin, and that Hilling thereupon agreed that eS E?--n 1 sale should be held on May 22, notwithstanding the refusal of McLaughlin to permit the plaintiff to sell any of its equipment. The plaintiff does admit that at the time of this telephone call, Hilling tried to get the plaintiff to agree to reduce its commission from ten per cent to seven per cent, but asserts that this was rejected by the plaintiff.

Hilling, on the other hand, states that prior to the giving of the letter upon which the plaintiff relies as a contract, the plaintiff's president told him that the number of potential buyers who would be attracted to the defendants' sale would be greatly increased if McLaughlin could be induced to sell a portion of its equipment either before or after the defendants' sale. Hilling further states that the defendants did consider having the plaintiff conduct such sale, but that it was understood that there would be no final selection of an auctioneer until after the results of plaintiff's negotiations with McLaughlin were known.

It is evident that a determination of the truth from the affidavits of the parties in this case is very difficult, since the statements made in the various affidavits are contradictory. The trial court did not have the advantage of seeing the witnesses and observing their demeanor on the stand, and so the trial court was in no better position to determine the truth than we are on this appeal.

In construing a document to determine whether or not the parties reached an agreement and entered into a contract, it must appear that the consent of the parties was free, mutual, and communicated to each other. Sec. 9–03–01, N.D.C.C. We therefore must determine in this case whether there was, in fact, a contract entered into by the parties. The plaintiff asserts that the purpose of the written instrument upon which it relies as a contract was to give to the plaintiff the job of conducting the auction; while the defendants state that the only purpose of their letter was to assist the plaintiff in trying to induce McLaughlin to sell at least a part of its equipment at the time of the defendants' sale so as to attract additional buyers. The defendants further assert that no decision was to be made as to who was to conduct the sale until after McLaughlin had been contacted.

The letter upon which plaintiff relies as a contract between the parties does state that the plaintiff had authority to sell the assets of the defendants. The letter further provides that this equipment would be painted and prepared for sale and delivered to the sale site at least one week prior to the date of sale. It also provides that no part of the equipment was to be sold by the defendants at private sale. Finally, it specifies the commission which was to be paid by the defendants to the plaintiff as ten per cent of the gross amount of the sale, payable in Canadian funds.

The plaintiff did not sign this letter as a party to any agreement, except that the president of the plaintiff company did sign as a witness to Hilling's signature. Did the fact that the president of the defendants executed this instrument make it enforceable as a contract by the plaintiff, even though the plaintiff did not execute the purported contract?

A contract which has not been performed by one of the parties who seeks to enforce it must create mutual obligations upon the parties to be enforceable. Under North Dakota law, mutuality of obligation is an essential element of a valid contract. Hablas v. Armour and Company, 270 F.2d 71 (8th Cir. 1959). The consent of the parties to a contract must be free and mutual, and must be communicated to each other. Both parties must be bound, or neither is bound. Shellburg v. Wilton Bank, 39 N.D. 530, 167 N.W. 721. Thus a contract, to impose mutual obligations, must impose an obligation upon each of the parties to do something or to permit something to be done as consideration for the act or promise of the other. Ireland v. Charlesworth, 98 N.W.2d 224 (N.D.1959).

Since the instrument which is relied upon by the plaintiff as a contract lacked mutuality, it was, at best, an offer made by the defendants to hire the plaintiff to sell the defendants' property. The affidavits of the parties concede that Stewart and Hilling discussed the matter of getting McLaughlin to sell a part of its property before, in conjunction with, or immediately after the defendants' sale. All parties further concede that the plaintiff's president did call on McLaughlin immediately after he had received the letter upon which the plaintiff now relies as a contract. McLaughlin, however, was not interested in selling any of its property at auction. Whether the plaintiff's president called the defendants' president to tell him that McLaughlin had declined to participate in the sale, as asserted by the plaintiff, or whether the defendants had to contact the plaintiff to learn of McLaughlin's decision, as the defendants allege, is immaterial. The fact is that McLaughlin refused to sell any of its property at auction. Thus, when the plaintiff's president informed the defendants that he had contacted McLaughlin and that McLaughlin would not sell any of its equipment in connection with defendants' sale, the plaintiff could not comply with the conditions of the offer made by the defendants. So there was no acceptance of the defendants' offer, and no agreement was consummated between the parties.

It appears that the defendants thereafter made a new offer, because both parties state that the defendants' president asked the plaintiff to conduct the sale for a commission of seven per cent. The plaintiff admits that this offer was made, but that it was rejected. Thus there was no agreement reached between the parties, and no valid contract was entered into.

The plaintiff brings this action for ten per cent commission of the total gross sale price of the defendants' property, which the defendants thereafter sold without the services of the plaintiff. The plaintiff, as the party bringing the action, has the burden of proof that there was a contract between the parties. Beers v. Schallern, 36 N.D. 45, 161 N.W. 557. We find that it has not sustained this burden. Therefore, we find that no contract ever was entered into between the parties.

Merv. Stewart, the president of the plaintiff, states that he personally typed the letter upon which the plaintiff now relies as a contract between the parties. This court has held that where there is doubt as to the meaning of a written instrument or contract, it should be interpreted against the party by whom the contract was drawn. Lakeland Realty Co. of Minnesota v. Reese, 77 N.D. 904, 46 N.W. 2d 696. See also Stuart v. Secrest, 170 N. W.2d 878 (N.D.1969); Shimek v. Vogel, 105 N.W.2d 677 (N.D.1960).

For reasons stated in this opinion, the judgment of the district court is affirmed.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.